**UNITED STATES of America**

v.

**Ronald James CLARK, Appellant.**

No. 72–1242.

United States Court of Appeals,
Third Circuit.

Argued June 20, 1972.

Decided Oct. 3, 1972.

Ritchie T. Marsh, Marsh, Spaeder, Baur, Spaeder & Schaaf, Erie, Pa., for appellant.

David M. Curry, Asst. U. S. Atty. (Richard L. Thornburgh, U. S. Atty., Kathleen Kelly Curtin, Asst. U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before GIBBONS, JAMES ROSEN, and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

Appellant Ronald James Clark was convicted for failing to report for induction into the armed forces, in violation of 50 U.S.C. App. § 462(a). On appeal from that conviction, he alleges several grounds for reversal.

## I. THE FACTS

Although appellant has had many dealings with his draft board since he first registered at age eighteen, our chronology may begin in the summer of 1970. On July 17, the Local Board mailed appellant an order to report for induction on August 4. The order was mailed to appellant at the current mailing address listed in his Selective Service file, which was the address of his mother's home in Erie, Pennsylvania. Appellant failed to report on August 4. On August 10, however, the Local Board received a letter from appellant, stating in essence that he had been away from Erie since July 1970, that he had called home and had been informed of the induction order and that he would not return to Erie until September 1970, at which time he would "give you a call or come down and see you." A postscript was added: "I do not have any address for you to get in contact with me."

On August 13, 1970, despite the letter received from appellant, the Local Board mailed appellant another order to report for induction, this time on September 1. This second order, which was a Selective Service Form 252, was also mailed to appellant at his mother's home in Erie. Appellant again failed to report.

After the second failure to report, appellant's selective service file was forwarded by the Local Board to Selective Service Headquarters and subsequently was forwarded to the U. S. Attorney, who requested an F.B.I. investigation.

In the meantime, the Local Board received from appellant another letter, this one containing a California address. Appellant also contacted a California draft board and, using a California form given to him, filed a formal change of address with the Pennsylvania Local Board.

On November 20 the Local Board was instructed by Selective Service Headquarters to "reorder" appellant for induction. By "letter order" of that same date, mailed to appellant at his California address, the Local Board ordered appellant to report for induction in Erie on December 1. In the same letter appellant was given specific instructions to follow if he wished to transfer his induction to California. Appellant failed to report on December 1.

On December 14 the Local Board received a letter from appellant, acknowledging receipt of the "letter order" and enclosing another change-of-address form.

Subsequently appellant was indicted for failing to report for induction on December 1, 1970, at Erie.

Other facts will be recounted in connection with specific arguments below.

## II. VALIDITY OF THE "LETTER ORDER"

■ Appellant argues that the "letter order" was invalid since it was not a Selective Service Form 252, which contains important notices to inform the registrant of his rights, responsibilities,

and potential liabilities in connection with the induction order.

Although the "letter order" alone would not have met the requirements for a valid induction order. 32 C.F.R. § 1632.1, the "letter order" did not stand alone. The Local Board's order to report on September 1 was a proper Form 252, and appellant does not challenge the validity of that order. The "letter order" was simply a means of setting a new date to report in accordance with the existing induction order.

The dissenting opinion argues that appellant may have been convicted for a crime not charged by the grand jury. The indictment shows, however, that the grand jury charged appellant with committing a crime on December 1, 1971, specifically, with failing to obey an order of his Local Board to report for induction on that date. The fact that appellant did fail to report for induction on that date is conceded on this appeal. The only real question, then, is whether he was under a duty to report on December 1, which in turn depends upon whether the Local Board properly ordered him to report then. The majority holds that appellant was properly ordered to report on December 1, not because the "letter order" alone was a sufficient induction order, but because the "letter order" was a proper means to change the date set for compliance with the existing, admittedly valid, induction order of August 13.[1]

That a draft board can fix a new date for induction without sending a new Form 252 induction order has been recognized in several cases. In United States v. Ritchey, 423 F.2d 685 (9th Cir. 1970), the registrant reported for induction on the set date, but the induction process was not completed on that date, and a new date was set. On the new date the registrant failed to report. Subsequently a third date was set, at which time the registrant did report, but the induction process was again not completed and by "final letter" a fourth date was set for induction. When the registrant failed to report on that date, the failure to report was the basis of his indictment. The Court upheld the validity of the "final letter" fixing a new date for induction.

In United States ex rel. Luster v. McBee, 422 F.2d 562 (7th Cir.), cert. denied, Luster v. Cooksey, 400 U.S. 854, 91 S.Ct. 74, 27 L.Ed.2d 92 (1970), a valid Form 252 induction order was mailed to the registrant. On the induction date, however, questions arose about the medical acceptability of the registrant, which were settled only after the registrant's doctor had submitted statements. At that time a letter, not a Form 252, was sent to the registrant, the letter setting a new induction date. The Court upheld the registrant's duty to report in accordance with the letter.

In Swift v. Director of Selective Service, 145 U.S.App.D.C. 224, 448 F.2d 1147 (1971), the registrant, after several postponements, reported for induction on the date specified, but because the examining center was not capable of performing certain medical tests he was not inducted on that date. After a hospital examination the registrant was found to be acceptable, and he was thereupon mailed a letter setting a new date for his induction under the original Form 252 order. The court held that the original induction order was not cancelled, in effect upholding the registrant's duty to report on the new date set for his induction.

In the three cases mentioned, the registrant had reported for induction on the date set by the induction order, but in each case induction did not take place on that date. In United States v. Brunner, 457 F.2d 1301 (9th Cir. 1972), the registrant, like appellant here, failed to report on the date set by his induction order. Subsequently his local board scheduled five more induction dates, on all of

---

1. The questions on this point are purely legal; it is difficult to find support for an assertion that we are affirming on a factual basis different from that on which appellant was indicted and convicted. We do not hear defense counsel even hint that he was misled.

which the registrant failed to report. For the fifth of these subsequent failures the registrant was convicted. His conviction was upheld.

In addition, in many cases courts have recognized that, following a postponement of induction, the existing induction order remains in effect and the registrant may, by letter, be given a new date on which to comply with the order. *E. g.*, United States v. Whalen, 451 F.2d 755 (8th Cir. 1971); United States v. Jenson, 450 F.2d 1258 (9th Cir. 1971); United States v. Watson, 442 F.2d 1273 (8th Cir. 1971); United States v. Evans, 425 F.2d 302 (9th Cir. 1970); *see* 32 C.F.R. § 1632.2(d).

■■ The facts in this case indicate that the Selective Service authorities have been especially careful to accord appellant the maximum opportunity to comply with his duty to report for induction. Appellant had already failed to report for induction on August 4 in accordance with the first Form 252 induction order, but in response to appellant's letter explaining his absence from Pennsylvania a new Form 252 induction order was mailed. After appellant failed to report in accordance with that order,[2] Selective Service authorities, after investigation, gave appellant one more chance to comply with the order, by setting a new date for his induction. The

"letter order" used by the Local Board to set the new date was a valid means of doing so.[3]

Contrary to statements in the dissent, we do not hold that appellant committed a continuing offense. Simply because appellant was under a continuing duty to report for induction, see note 2, *supra*, does not necessarily mean that by violating that duty he has committed a continuing offense. A person has a continuing duty to register for the draft, yet Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970) held that failing to register for eight years did not constitute a continuing offense.[4] However, the dissent seems to argue that by stating that there was a continuing duty we therefore say that there was a continuing offense, which at least for the purposes of this opinion we do not hold.

This opinion holds only that where a registrant has failed to report for induction on the date set, his draft board may set a new date for his induction pursuant to the original order, and that he may be informed of the new date by a "letter order" such as that used here, without the necessity of a new Form 252.

## III. APPELLANT'S C.O. CLAIM

■ Appellant contends that on three separate occasions he expressed beliefs

2. Although appellant failed to report on the date specified in the induction order, he was thereafter under a continuing duty from day to day to report for induction. 32 C.F.R. § 1632.14(a); United States v. Winer, 456 F.2d 566, 568 n. 5 (3d Cir. 1972).

3. Appellant has contended in addition that the "letter order" was invalid since it was mailed to him only eleven days before the date set for reporting. Although 32 C.F.R. § 1632.1 now requires that the date specified for induction be at least thirty days after the Form 252 is mailed, prior to December 10, 1971, only ten days' time was required. Thus the eleven-day period would not have been unreasonable under the regulation even if appellant had been mailed his first Form 252 induction order, and it follows *a fortiori* that the period was not unreasonable here, where appellant

was mailed a "letter order" setting a date for compliance with an existing Form 252 induction order.

Although appellant was in California at the time and was ordered to report in Pennsylvania, specific instructions were given to effectuate a transfer of the induction to California in the event that hardship would be involved in returning to Pennsylvania. Thus there was no unreasonableness caused by the distance factor.

4. The Supreme Court specifically disavowed holding that 32 C.F.R. § 1611.7 (c), which imposed a continuing duty to register, was unauthorized. Toussie v. United States, *supra*, 397 U.S. at 121 n. 17, 90 S.Ct. 858. We have been given no reason to hold that 32 C.F.R. § 1632.14(a), which imposes a continuing duty to report for induction, is invalid.

that qualified him for conscientious objector status, that knowledge of his statements should be imputed to his Local Board, that the Local Board should have furnished him a Selective Service Form 150 and reopened his classification, and that the failure to do so invalidates his induction order.

The three statements were made under the following circumstances:

(1) *Examining Center.* On June 1, 1970, prior to the date his induction orders were mailed to him, appellant underwent an armed forces physical examination. During the examination he was interviewed by a "moral waiver clerk" about his prior criminal record. According to appellant's testimony at trial:

"Well, I went inside a room, and everybody who had a record, and she asked us to fill out a form and tell them what the record was, and whether we were arrested at that time, and what we were arrested for. She asked some of us that if we have any objection to the war, and I said, when she asked, I said that I didn't believe in killing or violence and that, and that I would not go into the service if I were called." (N.T. 89)

Appellant testified further that the clerk was writing down part of what she was told.

(2) *Statement to F.B.I. Agent.* After appellant failed to report in September 1970, his file was transferred to the U. S. Attorney, who requested an F.B.I. investigation. On October 20, 1970, an F.B.I. agent interviewed appellant in California. According to appellant's testimony at trial, he informed the agent of his conscientious opposition to armed forces service:

"Q. And did he ask you about your views in regards to fighting and going into the United States Army?

"A. Yes.

"Q. And what did you explain to him?

"A. Well, I told him I would not fight in the Army or any other Army right now, and that I just didn't·believe in violence.

"Q. And that you could not serve?

"A. Yes.

"Q. And did you also indicate to him that you were against any form of killing?

"A. Yes.

"Q. And did he question you excessively to your beliefs as to war and killing and the like?

"A. Yes.

"Q. Did you make it very clear to him your beliefs in that regard?

"A. Yes, I think so." (N.T. 91-2).

(3) *California Draft Board.* According to appellant's trial testimony, he visited a draft board in Santa Ana, California, in October 1970, and during the visit there he expressed his views regarding conscientious objection. (N.T. 92-4). Appellant did not testify, however, about the specific statements that he made or to whom he spoke.

We believe that in none of these three instances should knowledge of appellant's statements be imputed to his Local Board.

The Selective Service System is a complex administrative system. We recognize that proper functioning of the system relies upon each registrant's use of established procedures to present his claims and objections to his local board. Where a registrant has expressed his conscientious objection to persons other than the members or agents of his local board, to persuade a court to impute knowledge of those statements to the local board requires some strong factor or set of factors to countervail the strong interest in proper functioning of the system. No such factors are present here.

The moral waiver clerk at the examining center was questioning appellant about his prior criminal record for the purpose of determining whether his prior record disqualified him for service in the armed forces. The F.B.I. agent was questioning appellant after being

requested to do so by the U.S. Attorney's office in connection with the appellant's failure to report for induction in September 1970. The California draft board had been approached by appellant, according to his testimony, in connection with his wish to transfer his records to California. In none of these instances, we believe, was there a duty to transmit appellant's statements to the Local Board in Pennsylvania, nor do we believe that there could be any reasonable expectation that the statements would be transmitted to the Board.

Nor do we find any other factor in this case to warrant imputing to the Local Board knowledge of appellant's statements. Cf. United States v. Stafford, 389 F.2d 215 (2d Cir. 1968); United States v. Holmes, 426 F.2d 915 (2d Cir. 1970), vacated and remanded on other grounds, 402 U.S. 969, 91 S.Ct. 1644, 29 L.Ed.2d 134 (1971). We note that at the same time that appellant was allegedly making these statements, he wrote to his local board on several occasions, and in none of those letters did he indicate his conscientious objector beliefs.

Because we believe that knowledge of appellant's statements should not be imputed to his Local Board, and because he never otherwise indicated his conscientious objector views to his Local Board, we find it unnecessary to decide whether the views expressed would have constituted a prima facie claim for conscientious objector status, or whether reopening of appellant's classification would be barred by the decision in Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971).

## IV. WILFULNESS

■ Appellant contends that his failure to report, although intentional, was not wilful since his statements show that he conscientiously objects to the armed forces "and an evil mind or intent is not manifested from such statements." (Brief, p. 10). This contention is without merit. See United States v. Rabb, 394 F.2d 230, 232 (3d Cir. 1968).

## V. VENUE

Appellant contends that his crime, if any, was committed in California rather than in Pennsylvania, and that venue for his trial should have been in the federal courts in California. We disagree.

■ Appellant was ordered to report for induction in Erie, Pennsylvania. He failed to report there. He took no action to transfer his induction to California. Thus the offense occurred in Pennsylvania, even though appellant himself may have been in California at the time set for his induction. Venue was properly placed in the Western District of Pennsylvania. Johnston v. United States, 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097 (1956); United States v. Scott, 424 F.2d 285 (4th Cir. 1970); Jones v. Pescor, 169 F.2d 853 (8th Cir. 1948).

The judgment of conviction will be affirmed.

GIBBONS, Circuit Judge (dissenting).

The appellant was indicted by a grand jury for failing to report for induction into the armed forces on December 1, 1970, in violation of 50 U.S.C.App. § 462 (a). Since § 462(a) lists a whole series of possible offenses, a grand jury indictment charging that the defendant violated § 462(a), without more, obviously would be so vague that the defendant would not be informed of the charge he was to defend against. Thus, at a minimum, the indictment must specify what duty the defendant is alleged to have violated. See Rule 7(c), Fed.R.Crim.P. Here it does not refer to any specific order to report for induction, but it does refer to the registrant's failure to report on December 1, 1970. We take this to mean that the grand jury indicted appellant for his failure to comply with the November 20, 1970 letter from the board directing him to report on that date. Indeed at the trial in the district court the Government seems to have proceeded on the theory that the November 20, 1970 letter was a valid induction order.

On appeal, however, the Government concedes that the November 20 letter alone would not have met the requirements for a valid induction order. 32 C.F.R. § 1632.1 (1971). It now relies on the August 13, 1970 induction order (the second induction order) which directed appellant to report on September 1, 1970. The Government's position (which the majority does not expressly espouse) is that appellant was under a continuing duty to report for induction from September 1, 1970, until the time of his indictment. *See* 32 C.F.R. § 1642.-15 (1971). On this theory, apparently, the appellant must have committed a separate criminal offense each day after September 1, 1970, that he failed to submit to induction. Since December 1, 1970, was one such day, appellant can be convicted of the offense charged in the indictment. There are several difficulties with that approach to an affirmance of a criminal conviction.

The first is that by any fair reading of the indictment it charges a failure to report pursuant to the November 20, 1970 letter, not a failure to report pursuant to a continuing duty arising by virtue of the August 13 induction order. The court of appeals may not substitute a new and different indictment for that handed down by the grand jury. U.S. Const. amend. V, § 1; Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

The second difficulty is that the appellate court cannot affirm on a reconstruction of the indictment quite different from that considered by the trier of facts in the district court. We do not know what the record would have been, or what the district court's decision would have been, had the case been tried on the Government's theory, adopted on appeal, of a continuing duty from September 1, 1970.

Third, even if we were free to affirm a criminal conviction on a factual and legal basis other than that considered by the trier of facts below, and even if we were free to construe the indictment as charging a continuing offense of failing

to report for induction pursuant to the August 13, 1970 induction order, that construction raises a fundamental issue as to its legal sufficiency. In Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), the Supreme Court considered whether 50 U.S.C.App. § 462(a), properly construed, created a continuing offense. The Court said:

"Unlike other instances in which this Court has held that a particular statute describes a continuing offense, there is no language in this Act that clearly contemplates a prolonged course of conduct. While it is true that the regulation does in explicit terms refer to registration as a continuing duty, we cannot give it the effect of making this criminal offense a continuing one. Since such offenses are not to be implied except in limited circumstances, and since questions of limitations are fundamentally matters of legislative not administrative decision, we think this regulation should not be relied upon effectively to stretch a five-year statute of limitations into a 13-year one, unless the statute itself, apart from the regulation, justifies that conclusion." 397 U.S. at 120–121, 90 S.Ct. at 863 (footnotes omitted).

*Toussie* controls here, for although it considered the continuing duty to register imposed in 32 C.F.R. § 1611.7(c), rather than the continuing duty to report for induction imposed in 32 C.F.R. § 1642.15, the statute which it construed is identically applicable to each regulation imposing a continuing duty. *See* United States v. Figurell, 462 F.2d 1080, 1082–1083, n. 5 (3d Cir. 1972). The result of the *Toussie* case was considered by Congress when it enacted the 1971 amendments to the Military Selective Service Act of 1967, Pub.L. No. 92–129 (Sept. 28, 1971). The Senate Report states:

"The House version included a provision recommended by the Administration by adding a new subsection 5(d) which will overcome the result

of Toussie v. United States, [397 U.S. 112,] 90 S.Ct. 858 [, 25 L.Ed.2d 156] (1970). That opinion interpreted the Act to limit the time for prosecuting men who fail to register to five years and five days after a man's 18th birthday. The Committee language will allow the prosecution of a nonregistrant up to five years after his 26th birthday. It does not change the statute of limitations for any other violation of Selective Service law." 2 U.S.Code Cong. & Ad.News 1455 (92d Cong., 1st Sess.) (1971).

The amendment referred to, which now appears at 50 U.S.C.App. § 462(d) (Supp.1972), is inapplicable to the appellant both by its terms (it deals only with failure to register) and because it was enacted long after the events with which appellant was charged. But the amendment is significant nevertheless, for it shows that Congress has concurred in the Supreme Court's basic interpretation of 50 U.S.C.App. § 462(a), as not authorizing the Selective Service System, by regulation, to create continuing offenses not enacted by the legislature.[1]

Indeed the continuing duty construction of the indictment, and hence of the statute, contended for by the Government, presents extremely troublesome issues. If a defendant should be indicted for failing to report on December 1, pursuant to a continuing duty, and should be acquitted, may he be reindicted, tried, and convicted, for failure to report on November 30? Appellant has been convicted for failing to report on December 1. Did he commit a separate offense on November 30, and on every day after September 1, and if so, may the grand jury indict him in separate counts for each of those offenses? I believe that we are constrained to hold that a single

offense occurs when a registrant fails to obey a valid induction order. The clear implication of the majority opinion is otherwise, for it affirms a conviction on an indictment alleging a failure to report on December 1, 1970, pursuant to an order which directed the appellant to report on September 1, 1970.

The majority opinion, while recognizing that Toussie v. United States, *supra,* prevents the explicit espousal of the Government's position, draws a distinction between a "continuing offense" and a "continuing duty." It purports to narrow its holding by stating:

"This opinion holds. only that where a registrant has failed to report for induction on the date set, his draft board may set a new date for his induction pursuant to the original order, and that he may be informed of the new date by a 'letter order' such as that used here, without the necessity of a new Form 252."

Such an *ipse dixit* does not dispose of the *Toussie* problem however. If a registrant fails to report for induction and a letter fixing a new date is issued may the registrant, even though he reports on the new date, be indicted for having failed, in the interim, to comply with the continuing duty to report specified in 32 C.F.R. § 1632.14? Has the statute of limitations been running in the meantime? Does the board's power to issue a "letter order" give it the power to lengthen the statute of limitations on the initial failure to report? Does its power to issue "letter orders" give it the power to multiply the number of occasions on which a registrant fails to report pursuant to a valid induction order, and hence the number of offenses? The Supreme Court in Toussie v. United States, *supra,* rejected a construction of 50 U.S.

1. 50 U.S.C.App. § 454(a) makes certain registrants who have failed to report for induction continuously liable for induction "when available." This section does not create a continuing offense. It authorizes a new induction order to persons such as those serving a sentence for failure to report for induction, who complete their sentence while still of

draft age. *See* 1 U.S.Code Cong. & Ad. News, 1346 (90th Cong., 1st Sess.) (1967). It extends liability for service past twenty-six to those who by litigation postponed induction past that age. *Id.* at 1333, 1346, 1353. But even for such persons a new induction order is needed to trigger a new duty to report.

C.App. § 462(a) which would have permitted the Selective Service System, by a regulation specifying a continuing duty, to enlarge the period of the statute of limitations or the number of offenses. It could have but it did not accept the distinction between continuing duties and continuing offenses which the majority purports to find authorized by the same statute.

But more to the point, neither the grand jury nor the district court believed they were dealing with the violation of a continuing duty. The offense charged in the indictment and tried in the district court was bottomed upon the assumption that the duty to report was imposed by the November 20, 1970 letter, and not by the August 13, 1970 induction order. As the majority opinion points out, there was, in addition a July 17, 1970 induction order. We have seen many Selective Service files containing more than one induction order. We are dealing with a criminal case, and it would seem that the very minimum of due process requires that the indictment refer to which of several possible induction orders gave rise to the alleged duty. By adopting a theory that the indictment actually referred to the August 13, 1970 induction order, though it referred to the date of December 1, 1970 rather than to the date of September 1, 1970, the majority purports to find a sufficient reference. But on that construction of this indictment the grand jury might as well have been referring to the July 17, 1970 induction order. Or, perhaps, if Clark had been acquitted he might have been reindicted under one or the other induction orders. The fact of the matter is that the Government, the grand jury and the district court proceeded under the mistaken impression that the November 20, 1970 letter was a valid induction order, when it was not. The theory on which the court of appeals now affirms substitutes a new and different indictment for that handed down by the grand jury. This a federal court may not do. U.S.Const. amend. V, § 1; Stirone v. United States,

*supra.* And as I said above, the new and different indictment is defective under Toussie v. United States, *supra.*

I would reverse the conviction.