UNITED STATES of America

v.

Jeffrey Lynn ROBINSON, Appellant.

No. 73–1124.

United States Court of Appeals, Third Circuit.

Argued June 12, 1973.

Decided Sept. 26, 1973.

**1158**

Edward H. Weis, Defender Assn. of Philadelphia, Philadelphia, Pa., for appellant.

Robert E. J. Curran, U. S. Atty., Carmen C. Nasuti, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before GIBBONS, ROSENN, and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Appellant Robinson was indicted on two counts of failing to perform duties required by the Selective Service Act of 1967, 50 App. U.S.C. § 451 et seq. The first count alleges that he failed to keep his local board informed as to his current address; the second charges him with refusing to report for induction on November 6, 1968 and "continuing from day to day thereafter . . . ."

A jury returned verdicts of guilty on both counts and post trial motions for judgment of acquittal and for a new trial were denied.

On appeal Robinson contends:

1. With respect to both counts, that a new trial is required because the trial court refused to permit voir dire examination of the jury panel as to racial prejudice; and

2. As to the second count:
 a. a judgment of acquittal was required, or
 b. that a new trial is required because of errors in the charge to the jury.

## THE VOIR DIRE EXAMINATION

Robinson is black as were some of the key witnesses, both for prosecution and defense. Defense counsel asked that the jury panel be asked:

"Would you take into consideration a witnsess's race in determining his credibility?"

The trial judge denied the request, saying:

"You have little faith in our system. I'm not impressed." [1]

---

1. The jurors had previously been asked, *inter alia:*

"Do you know of any reason why you may be prejudiced for or against the government or the defendant because of the nature of the charges or otherwise?"

\* \* \* \* \*

"Have you an opinion as to the guilt or innocence of the defendant or any of the charges contained in the indictment at this time or have you ever expressed an opinion as to the guilt or innocence of the defendant?"

\* \* \* \* \*

"If you were the United States Attorney charged with the responsibility for prosecuting this case, or if you were the defendant on trial here today, charged with the same offense, or his counsel, do you know of any reason why you would not be content to have your case tried by someone in your frame of mind?"

\* \* \* \* \*

"Can you think of any other matter which you should call to the court's attention which may have some bearing on your qualifications as a juror or which may prevent your ren-

Aldridge v. United States, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931), held that in trials in the federal courts upon a timely request, the judge must permit voir dire examination as to possible racial prejudice. While many would agree with the reaction of the distinguished trial judge that such interrogation in itself is a reflection upon the integrity of the jury panel, nevertheless the Supreme Court has taken a contrary view. Thus, in *Aldridge, supra,* Chief Justice Hughes wrote:

> "The argument is advanced on behalf of the government that it would be detrimental to the administration of the law in the courts of the United States to allow questions to jurors as to racial or religious prejudices. We think that it would be far more injurious to permit it to be thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred. No surer way could be devised to bring the processes of justice into disrepute." (pages 314–315, 51 S.Ct. page 473)

■ In United States v. Bamberger, 456 F.2d 1119 (3rd Cir. 1972), this court recognized the *Aldridge* rule, although leaving to the trial judge wide discretion in determining what particular questions should be asked. No error was found in that case when defense counsel was permitted to ask questions dealing with racial prejudice.[2] Any doubts as to the mandatory requirements of the *Aldridge* rule were dispelled by the case of Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), decided after the opinion of the district court had been handed down. The Supreme Court emphasized that the right to have the judge make

inquiry on voir dire as to racial prejudice was one of constitutional dimensions. In that case general questions dealing with bias or prejudice not specifically referring to race were held inadequate to cure the defect, and reversal was ordered.

The government contends that *Aldridge* and *Ham* are not controlling in this case because the specific question suggested by counsel dealt with credibility of witnesses based upon their race rather than with prejudice against the defendant as such based upon his race. Aside from the fact that the district court's reaction to the question effectively put an end to any exploration of the area of racial prejudice, we think any such fine distinction between prejudice against witnesses based upon race and prejudice against the defendant based upon race would be pettifogging.

■ Both sides in a jury trial are entitled to have the credibility of witnesses judged by relevant standards. Both sides—but especially defendants— are entitled to remove for cause prospective jurors who would judge the credibility of witnesses by improper standards. Both sides should be free to exercise peremptory challenges in the light of their informed judgment as to the likely receptivity of the jurors to the testimony which will be presented. *Cf.* Swain v. Alabama, 380 U.S. 202, 220, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

The government also urges that if there was error here, it was harmless beyond a reasonable doubt, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Because at least one of the witnesses against Robinson was black, the government contends that any racial prejudice against black witnesses must have been neutralized. We cannot make such a finding.

dering a fair and impartial verdict based solely on the evidence and my instructions as to the law?"

2. United States v. Leftwich, 461 F.2d 586 (3rd Cir. 1972), held that even though a timely request had been made for voir dire ques-

tioning on the racial issue, the point had not been pressed on the day that the jury was being empaneled and objection was not made on the record until after the selected jurors had been sworn and the other prospective members had been excused.

Assuming that a given juror believed all black witnesses to be less credible than white witnesses, that prejudice operated in the juror's evaluation of Robinson's testimony. The fact that it may also have operated in the evaluation of the testimony of other witnesses is irrelevant, for Robinson was entitled to have his testimony evaluated free from the taint of such prejudice. There is no doctrine of equality of prejudicial error.

Moreover, a black witness who testified in favor of the government would be clothed with whatever additional mantle of credibility his status as a government witness afforded him, whereas Robinson was a defendant and obviously interested in the outcome. If a juror entertained a prejudice against black witnesses, that prejudice would have had a far greater effect on the testimony of the defendant than upon that of a government witness. Thus, there is no such neutral prejudice as the government suggests.

■ It was reversible error to decline the request for a voir dire inquiry into the possible racial bias of jurors, and we cannot hold that this ruling was harmless. *See also* United States v. Booker, 480 F.2d 1310 (7th Cir. 1973).[3]

## THE CHARGE ON DUTY TO REPORT FOR INDUCTION

The Selective Service file established that a letter dated October 22, 1968, ordering Robinson to report for induction on November 6, 1968, was addressed to him at 3519 N. 21st Street, Philadelphia, Pennsylvania (his mother's address),

with a copy, c/o Mrs. Pamela J. Robinson, 1134 S. 47th Street, Philadelphia, Pennsylvania.[4]

The envelope addressed to 3519 N. 21st Street was returned to the local board on October 28, 1968, marked, apparently by the Post Office, "Address Unknown", "Moved, left no Address", "Moved, not forwardable". The copy addressed to 1134 S. 47th Street was returned to the local board, which stamped both the letter and the envelope with a date stamp "November 6, 1968". The secretary of the local board testified that the envelope was open when it was returned.

Robinson's mother, who was called by the government, gave her address as 3519 N. 21st Street and said that the defendant had not lived there after he married Pamela Robinson in 1967. The defendant's mother also testified that she did not know his whereabouts but had told him on one occasion that the Selective Service people and the FBI had been looking for him. Her testimony also established that Pamela Robinson had given her the envelope addressed to the defendant at 1134 S. 47th Street and that it was then mailed back to the local board.

The defendant's estranged wife, Pamela, testified that she had received the letter and turned it over to his mother. Pamela said, further, that at some time, not specified in the record, she was contacted by the FBI and was advised that Robinson was delinquent. She saw the defendant on one occasion thereafter, told him that he was under orders to re-

---

3. We need not in this case decide whether, in view of the general prohibition against post trial exploration of the jury's deliberations, there is any room for the operation of a harmless error finding in connection with those rules designed to insulate those deliberations from improper extrajudicial influences. *But see* Sheppard v. Maxwell, 384 U.S. 333, 352, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) ; Rideau v. Louisiana, 373 U.S. 723, 727, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), which suggest that the inquiry stops with a mere possibility of such taint.

4. A Form 252, as required by 32 CFR 1632.1 had been issued in November, 1967. At that time the defendant had been ordered to report for induction on December 5, 1967 but the notice was returned to the board with a notation, "Whereabouts Unknown". He did report to the board on September 23, 1968 and gave the address as 3519 N. 21st Street. As to the adequacy of the letter of October 22, 1968, *see* United States v. Clark, 468 F.2d 708 (3rd Cir. 1972).

port for induction, and that he was to contact the board and the FBI.

Robinson testified in his own behalf and alleged that he had not received either copy of the October 22, 1968 letter.

The court charged the jury in part as follows:

"The defendant claims that he did not receive any notice for induction. The truth of this claim is for you to determine. In order to find the defendant guilty, however, you must find, beyond a reasonable doubt, that he received the notice to report for induction prior to the time when, according to the notice, he was required to report, which was November 6, 1968 at 7:30 A.M., and that the defendant, willfully and knowingly, failed to report for and submit to induction as ordered. (N.T. 126) . . . The failure to report was willful if—and only if—the defendant was fully aware of his obligation to comply with the order to report for induction, but failed to do so with the intent to avoid his obligation under the Selective Service Act."

Some two hours after the jury retired to deliberate, the foreman sent the following question to the trial judge:

"In reference to the letter for induction delivered to Mrs. Pamela Robinson, addressed to Jeffrey Robinson, does the evidence show if she conveyed this information to her husband, Jeffrey, when she spoke to him and told him the FBI was looking for him?

"Does verbal discussion with his wife constitute legal proof that he did 'knowingly' refuse to perform a duty required of him as stated in Count II of the indictment?"

Counsel were summoned to the courtroom, and the trial court made the following reply, in part:

"If you believe the testimony of his wife that she told him that the FBI was looking for him, and that he was supposed to report for induction, 'knowingly' means done voluntarily and intentionally and not because of mistake, accident, or other innocent reason.

"In effect, if he knew from her that the FBI was looking for him, and that the FBI said he was supposed to report, that would be knowledge on his part.

"It is not necessary that he saw or read the letter or that the letter was read to him." (N.T. 141)

Defense counsel requested a repetition of a portion of the original charge that the defendant had to have notice of the date and time he was to report. The court refused this as not encompassed in the jury's request.

It will be noted that there is a variation between the original charge of the court which required the defendant to have notice of the date of the time before he was to report and the supplemental instruction which might fairly be said to permit an inference to the contrary.

In its opinion refusing a new trial, the district court said:

"The law is clear, however, that the Selective Service Act imposes a continuing duty upon a registrant to report for induction upon receiving notice of the order even though such notice is received after the date on which the registrant is ordered to report."

Since this proposition was not explained to the jury and it is inconsistent with the original charge of the court, the discrepancy should be remedied upon the retrial.

The indictment clearly specified a continuing duty. The second count reads in part:

"That on or about November 6, 1968, and continuing from day to day thereafter in Philadelphia, Pennsylvania, in the Eastern District of Philadelphia, JEFFREY LYNN ROBINSON, being a male person and subject to the rules

and regulations of the Military Selective Service Act of 1967, did knowingly and unlawfully fail, neglect and refuse to perform a duty required of him by the provisions of the said Act, in that he did knowingly fail, neglect and refuse to comply with a valid and lawful order of Local Board 140, Federal Building, 1421 Cherry Street, Philadelphia, Pennsylvania, dated November 17, 1967, amended by letter of October 22, 1968, directing him to report for and submit for induction into the Armed Forces of the United States, that is to report to 401 North Broad Street, Philadelphia, Pennsylvania on November 6, 1968 at 7:30 A.M. for induction."

 While there is opposition to the theory that failing to report for induction is a continuing offense, we follow the weight of authority which sustains that interpretation.[5]

50 U.S.C.App. § 454(a) sets forth the amendment of 1967 and reads in part:

"Provided further, That, notwithstanding any other provision of law, any registrant who has failed or refused to report for induction shall continue to remain liable for induction and when available shall be immediately inducted . . ."[6]

In reporting on this part of the Military Selective Service Act, the committee said:

"The first change insures that a registrant who prolongs the litigation of his draft classification beyond the age of 26 would nontheless remain liable for induction if he is later found qualified for induction. This provision further clarifies the congressional intent that prosecution for one offense under this law will not bar prosecution for a subsequent offense even though it is an identical offense." (1 U.S.Code Congressional and Administrative News, 1346 (1967)).

In United States v. Winer, 456 F.2d 566, 568, fn. 5 (3rd Cir. 1972), this court said:

"Although defendant had failed to report for induction on June 14, 1965, after the issuance of a valid induction order, he was under a continuing duty to report from that date until the order of May 8, 1967, postponing his induction date for the future."

In United States v. Clark, *supra*, the majority found a continuing duty to report for induction but said:

"This opinion holds only that where a registrant has failed to report for induction on the date set, his draft board may set a new date for his induction pursuant to the original order, and that he may be informed of a new date by a 'letter order' such as that used here, without the necessity of a new Form 252."[7]

---

5. United States v. Prince, 398 F.2d 686 (2d Cir. 1968), United States v. Preston, 420 F.2d 60 (5th Cir. 1969), White v. United States, 403 F.2d 1005 (8th Cir. 1968), all hold that there is a continuing duty to report for induction.

United States v. Newlon, 460 F.2d 1268 (9th Cir. 1972), found no continuing offense when the indictment only charged a failure to report on a specified date, but in United States v. Williams, 433 F.2d 1305 (9th Cir. 1970), the same court clearly found a continuing duty to report.

6. 32 CFR § 1632.14:
"(a) When the local board orders the registrant for induction it shall be the duty of the registrant to report for induction at the time and place ordered by the local board. If the time when the registrant is ordered

to report for induction is postponed, it shall be the continuing duty of the registrant to report for induction at such time and place as may be ordered by the local board. Regardless of the time when or the circumstances under which a registrant fails to report for induction when it is his duty to do so, it shall thereafter be his continuing duty from day to day to report for induction to his local board."

7. The indictment in the *Clark* case did not charge that the offense was a continuing one. Similarly the indictment in United States v. Figurell, 462 F.2d 1080 (3rd Cir. 1972), alleged that the defendant failed to report a change in circumstances on a specified date. The underlying regulation in *Figurell, supra,* did not purport to impose a continuing duty.

We do not read Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L. Ed.2d 156 (1970), as militating against a conviction based on a continuing duty to report for induction. *Toussie* was concerned only with the statute of limitations as it applied to the duty to register, and as to that obligation there is no comparable provision in the statute as does exist with respect to the duty to report for induction. Furthermore, the congressional action in amending the statute to reverse the effect of *Toussie*, *see* 50 U.S.C.App. § 462(d) (Supp. 1973), is a strong indication that the legislative intent was indeed to impose a continuing duty.

The majority in the *Toussie* decision noted the tension between a statute of limitations and the continuing offense doctrine but stated at page 115, 90 S.Ct. at page 860:

> "These considerations do not mean that a particular offense should never be construed as a continuing one. They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one."

[7] *Toussie* is not adverse to the result we reach in this case, nor do we disagree with the philosophy of that decision that a continuing offense should not be implied except in limited circumstances. The doctrine of continuing offense is not one foreign to our law and is not one we should hesitate to apply when congressional policy and the obvious necessity of making men available for military service on a continuing basis are fully consistent with such an interpretation.

We hold that on the retrial of this case, under the form of the indictment presented, if there is an adequate factual basis to support the charge, the jury should be instructed on the nature of a continuing offense.

The judgment of the district court will be reversed, and a new trial granted as to both counts of the indictment.

GIBBONS, Circuit Judge (concurring and dissenting).

I concur in Judge Weis' opinion except to the extent that it remands for a new trial on the second count. On that count I would remand for the entry of a judgment of acquittal. The majority opinion resolves the issue left open by the majority opinion in United States v. Clark, 468 F.2d 708 (3d Cir. 1972). As I indicated, in dissenting in *Clark*, I believe the Supreme Court's interpretation in Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970) of 50 U.S.C.App. § 453, prohibits a construction of that statute which would make failure to report for induction pursuant to an order to report on a designated date a continuing rather than a single offense.

Although the Government proceeded in the district court on the theory that it had to bring home notice to Robinson prior to November 6, 1968, it now espouses and the majority accepts the district court's continuing duty theory. It points to the language of the indictment:

> "That on or about November 6, 1968, *and continuing from day to day thereafter* . . . Robinson . . . did knowingly and unlawfully fail . . . to comply with a valid and lawful order . . . to report for and submit to induction into the Armed Forces of the United States, that is, to report to 401 North Broad Street, Philadelphia, Pennsylvania on November 6, 1968 at 7:30 A.M. for induction." (emphasis added).

Putting aside the question whether the United States should be estopped on appeal from adopting a construction of an indictment different from that advanced at trial, I cannot in view of the Supreme Court's decision in *Toussie* sustain this conviction on a continuing duty theory. In *Toussie* the Court was urged to accept the argument that

the duty to register was a continuing one. It noted that applicable regulations described the violation as a continuing one, but that the statute, 50 U.S.C.App. § 453, was unclear. It observed that the policy behind the statute of limitations conflicted with any continuing offense doctrine, and said:

"These considerations do not mean that a particular offense should never be construed as a continuing one. They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* at 115, 90 S.Ct. at 860.

The Court found no such explicit language in the Selective Service Act of 1967. In United States v. Figurell, 462 F.2d 1080, 1082–1083, n.5 (3d Cir. 1972), this court applied the *Toussie* construction of the Act to another selective service duty, noting that failure to report a change in status is not a continuing offense. In United States v. Clark, 468 F.2d 708 (3d Cir. 1972), we considered *Toussie* in the context of the duty to report for induction. The majority opinion sustained the validity of an indictment for failing to obey a letter order to report on a specific date supplementing a prior Form 252 order to report for induction. But the majority, while sustaining an indictment for failing to obey what might otherwise have been an insufficient order to report for induction, carefully distinguished between a continuing duty, which could be implemented by a letter from the local board and a continuing offense. The offense was the failure to report at the time and place specified in the letter. I had trouble with the majority opinion in *Clark*. My dissenting opinion and the majority opinion, however, found common ground in the *Toussie* single offense construction of the Selective Service Act of 1967. As the majority opinion put it, "[s]imply because appellant was under a continuing duty to report for induction . . . does not necessarily mean that by violating that duty he has committed a continuing offense." 468 F.2d at 711.

There is a greater justification for declining to make failure to report for induction a continuing offense than for a declining to make failing to register, Toussie v. United States, *supra,* or failing to report a change in status, United States v. Figurell, *supra,* continuing offenses. In the latter cases the board lacks information about the existence or status of the registrant. Thus, there is considerable possibility of a registrant avoiding detection. In the induction order case the local board well knows that its order has been violated, and it remains free to issue another order. *Toussie* and *Figurell,* therefore, are *a fortiori* cases. Indeed, Congress recognized as much, when, in reaction to the *Toussie* decision it revised the Selective Service Act to make failure to register a continuing offense. *See* 50 U.S.C.App. § 462(d) (Supp. 1973). It did not, however, in that revision make failing to report for induction a continuing offense. The majority opinion on the second count is clearly inconsistent with our prior decision in *Figurell.* The second count of the indictment as construed by the district court after the verdict, does not state an offense under the Act. The motion for a judgment of acquittal on that count should have been granted since knowledge of the date on which the registrant was to report was not brought home to him until after that date had passed.