UNITED STATES of America, Appellee,

v.

James WILLIAMS, Appellant.

No. 79–1153.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) Aug. 9, 1979.

Decided Dec. 28, 1979.

Certiorari Denied March 17, 1980.
See 100 S.Ct. 1328.

James J. Rohn, H. Clark Connor, III, Asst. U. S. Attys., Philadelphia, Pa., Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Bonnie Brigance Leadbetter, Asst. U. S. Atty., Donald A. Purdy, Jr., Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Edward H. Weis, Asst. Defender, Federal Court Division, Defender Assn. of Philadelphia, Philadelphia, Pa. for appellant.

Before ALDISERT and WEIS, Circuit Judges, and DIAMOND, District Judge.*

## OPINION OF THE COURT

DIAMOND, District Judge.

This appeal follows appellant's conviction of violating 18 U.S.C. § 922(h)(1) which prohibits convicted felons from receiving firearms shipped in interstate commerce. Appellant contends that the trial court erred in refusing: (1) to submit to the prospective jurors a voir dire question designed to detect racial prejudice; (2) to suppress as evidence the firearm in question; and (3) to order the prosecution to accept a proferred stipulation regarding appellant's prior felony conviction. For the reasons set forth below, we conclude that the trial court erred in refusing the voir dire question and, therefore, reverse appellant's conviction and order a new trial.

## I. THE VOIR DIRE QUESTION

Following the court's voir dire examination of the panel, appellant requested that the veniremen be asked "whether or not the fact that the defendant is black would in any way affect their judgment in the case or cause some difficulty to return a fair verdict?" The court refused, stating that the panel had seen the defendant and had been asked generally whether they would have any difficulty returning a verdict for or against him. Subsequently, when the matter was raised in a motion for new trial, the court noted as additional grounds for its ruling that three of the jurors and one of the government's witnesses were black.

We believe that our holding in *U. S. v. Robinson,* 485 F.2d 1157 (3d Cir. 1973) is controlling. In *Robinson,* relying on *Aldridge v. U. S.,* 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931) and *Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), we held that "upon a timely request, the judge must permit" an inquiry into the possible racial prejudice of a jury and that, therefore, the trial court erred in refusing to inquire of the veniremen whether they would consider a witness's race in assessing his credibility. 485 F.2d at 1159. We so ruled even though both parties had black witnesses and the panel already had been asked whether for any reason they would be prejudiced for or against the government.

█ The government argues that *Robinson* has been undermined by *Ristaino v. Ross,* 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976), wherein the Court held that inquiry into racial prejudice was not constitutionally required in every case, but rather was to be judged on a case-by-case basis.

* Honorable Gustave Diamond, of the United States District Court for the Western District of Pennsylvania, sitting by designation.

While it is true that the Court refused to create a per se constitutional rule in *Ristaino*; nevertheless, its holding is of little help to the government here. For in *Ristaino,* the constitutional propriety of a *state* criminal proceeding was in question, and while the Court refused to rule that a voir dire question similar to the one at issue here was constitutionally mandated, it nevertheless made it clear that had it been reviewing a *federal* proceeding, in the exercise of its supervisory powers it would have required that the racial-bias question be asked "if requested by the defendant." *Ristaino,* fn. 9. The net holding in *Robinson,* therefore, remains intact, and we conclude that the trial court erred in refusing to submit appellant's voir dire question. We also reject the government's fall-back contention that if there was error it was harmless, since we believe here, for the reasons stated in *Robinson,* that refusal to make the inquiry was not harmless error.

## II. THE SEIZURE OF THE FIREARM

The district court denied appellant's motion to suppress as evidence the predicate firearm, which was seized from defendant's person incident to his warrantless arrest.

The record below reveals the following facts and circumstances relative to the seizure. On October 31, 1978, at approximately 2:30 P.M. a shooting occurred at a hotel in Philadelphia. The assailant seriously wounded one person and shot at a witness in making an escape. Some time late that afternoon, after speaking to witnesses, two of whom actually saw the shooting, police focused on appellant as their prime suspect. At approximately 6:00 that evening, officer Albert Johnson of the Philadelphia Police Department received information from a reliable informant who stated that he knew from his personal knowledge that appellant had taken refuge in a house at 1920 Napa Street in Philadelphia, that he was armed, and that he was going to get his affairs together and then head south. The lessee-occupant of the Napa Street residence was one Christe Lewis whom appellant had known for some eight months. Ms. Lewis occupied the house along with her fiancee, and a roomer, one Lettie Allen.

Acting on the informant-information, officer Johnson and another policeman undertook surveillance of the Napa Street residence. Johnson stated at the suppression hearing that they intended to wait until the subject exited the building and then apprehend him. (46a) [1] However, sometime between 8:00 and 8:30 P.M., Johnson decided to contact detective Edward Gallagher who also was working on the case. Johnson told Gallagher of the informant's tip and of Johnson's surveillance activities over the past hour or so. Gallagher instructed Johnson to leave the scene and meet him and a Detective Weston at a place nearby. Upon meeting, Gallagher called for a wagon and two stake-out officers, policemen James Dawson and Dennis Walen. On arrival, the unit initially went to Berks Street, about a block from the Napa Street residence, from where officers Walen and Dawson began to advance toward the house with Gallagher and Weston several feet behind them. Officer Johnson went to the rear of the house where he remained with two other officers during the entire time. As the party traversed the sidewalk near the Napa Street house, they saw a black male open the front door and then quickly duck back inside. No one at the suppression hearing identified the male as the appellant.

Thereafter, according to the testimony of Dawson, the entire unit "went right into the house." (53a). The time was between 9:00 and 9:15 P.M. Gallagher testified that he and Weston followed Walen and Dawson into the house and that he, Dawson, and Walen had their guns drawn. Walen and Dawson headed straight upstairs for the second floor bedroom where they apprehended appellant and seized the firearm in question from his person.

---

1. The numbers in parenthesis refer to the pages of the appellate record where the cited language appears.

Despite the fact that a magistrate is apparently available twenty-four hours a day at the Philadelphia Police Administration Building, the officers admitted that they never attempted to procure either a search or an arrest warrant prior to the entry of the dwelling.

Our review of the witnesses' accounts of the hotel shooting and the balance of the police investigation leaves us with little doubt that the police had probable cause to arrest appellant. The real question, however, is the propriety of the warrantless entry of a private dwelling place to make that arrest. There is no question, of course, that if the entry and arrest were proper, the seizure was also proper as a valid search incident to the arrest. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

While the Supreme Court has approved warrantless arrests in public places upon probable cause, U. S. v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), it has reserved ruling more than once on the propriety of such arrests in private dwellings.[2] See U. S. v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); Watson, supra; Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Jones v. U. S., 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958).

In Coolidge, supra, a plurality of the Court suggested that the warrantless entry of a suspect's home to arrest him upon probable cause was illegal in the absence of exigent circumstances. The Second, Eighth, Ninth, and D.C. Circuits have expressly so ruled, see U. S. v. Reed, 572 F.2d 412 (2nd Cir. 1978); U. S. v. Houle, 603 F.2d 1297 (8th Cir. 1979); U. S. v. Prescott, 581 F.2d 1343 (9th Cir. 1978); and Dorman v. U.

S., 435 F.2d 385 (D.C.Cir.1970), while the Tenth Circuit has essentially adopted that rule, endorsing Coolidge, but making some reference to a case-by-case approach based on the relative reasonableness of the intrusion. See U. S. v. Erb, 596 F.2d 412 (10th Cir. 1979).[3]

■ We agree with those circuits which hold that in the absence of exigent circumstances the warrantless entry of a private dwelling place for the purpose of making an arrest is unlawful. In our Constitutional jurisprudence no subject has been so zealously protected from intrusion or seizure as the private dwelling place. See U. S. v. Martinez-Fuerte, 428 U.S. 543, 561, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976), "the sancity of private dwellings [is] ordinarily afforded the most stringent Fourth Amendment protection."; U. S. v. U. S. District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972), "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed . . ."; Silverman v. U. S., 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734 (1961), "[at] the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable [government] intrusion."

■ This protection extends as well to one such as appellant who is in the dwelling of a third party at the time of the arrest. In Fisher v. Volz, 496 F.2d 333, 341 (3d Cir. 1974), we held that absent probable cause "police officers may not constitutionally enter the home of an innocent citizen in search of a suspected offender for whom they have a valid arrest warrant . . ." We hold, therefore, that absent exigent circumstances, the entry and arrest in this case would violate the Fourth Amendment.

2. We note that argument was had before the Court in early October, 1979, on a pair of consolidated cases, Payton v. New York, 439 U.S. 1113, 99 S.Ct. 1014, 59 L.Ed.2d 71, and Riddick v. New York, 440 U.S. 934, 99 S.Ct. 1276, 59 L.Ed.2d 492, which squarely raised this issue.

3. Erb states that "we must look to all the facts and circumstances in order to ascertain the

reasonableness of the warrantless entry and arrests," 596 F.2d at 419, but then goes on to cite Coolidge's observation that warrantless entries into private dwellings are per se unreasonable in the absence of exigent circumstances and, in fact, find exigent circumstances in the situation before it.

■■ And where a warrantless arrest in a private dwelling is challenged, the government has the burden of proving that exigent circumstances existed at the time which justified such an arrest. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The most common examples of exigent circumstances are the hot-pursuit, fleeing-suspect, and destruction-of-evidence cases. *See,* for example, *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), and *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

In *Government of Virgin Islands v. Gereau,* 502 F.2d 914 (3d Cir. 1974) we found the following factors to be relevant in a fleeing-suspect case: (1) the gravity of the offense committed; (2) the belief that the suspect was armed; and (3) the likelihood that the suspect would escape in the absence of swift police action.

The district court in its memorandum opinion and order denying the appellant's motion to suppress, held that the government had sustained its burden of showing that both exigent circumstances and probable cause existed to justify the warrantless entry, arrest, and seizure of the weapon in question.

The court found exigent circumstances in that the police officers had probable cause to believe that a grave offense had been committed, that the suspect was armed, that he was on the premises in question, and that there was a likelihood that the suspect would escape if he were not quickly apprehended.

■ We believe that the case in support of the conclusion that exigent circumstances existed which justified the warrantless entry of the private residence for the purpose of effectuating the arrest therein is thin, but, nevertheless, sufficient to satisfy the fleeing-suspect criteria. For, while *subsequent* events indicated that the police officers had sufficient time and opportunity to obtain a search warrant; i. e., the appellant remained on the premises under surveillance for several hours before the arrest was made, when the officers first undertook the surveillance there is no evidence to suggest that they had any reason to believe that they would have more than minutes to wait for the appellant's exit. The officers had reasonable cause to believe from the informant-information that appellant had just been involved in a very serious crime, that he had fired his weapon at a witness in escaping the scene and that he was going to get his affairs together and go south, from all of which the officers were more than justified in believing that armed flight was imminent.

In reality, however, minutes became hours; yet we believe that notwithstanding the hindsight fact that sufficient time had existed for the obtaining of a warrant, the police were dealing with an exigent situation at the time of their entry. When the surveilling party approached the residence and observed the black male step out and then suddenly duck back into the house the officers were confronted with a circumstance which reasonably led them to believe that appellant would soon become aware of their presence and that an immediate response by entry was necessary to prevent the occurrence of contingencies which would have made appellant's capture alive and without harm to the police or others impossible, or at least, unlikely; i. e., that appellant would barricade himself in the residence and engage in a shootout or attempt an armed escape with or without hostages. The suspect had demonstrated his violent nature. The officers knew he was armed and probably alerted to their presence. Exigent circumstances therefore existed, and we see no reason to second-guess their tactical decision to deny the suspect the advantages that delay to procure a warrant would have presented.

The district court did not err in denying the motion to suppress.

## III. THE PROFFERED STIPULATION

The appellant's final point requires little discussion. It is an element of the crime proscribed under 18 U.S.C. § 922(h)(1) that the accused have been "under indictment

for, or . . . convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."

 Counsel for the appellant offered in effect to modify the statute by stipulating that the appellant was a convicted felon and to preclude thereby any mention to the jury of the appellant's felony status either by argument of counsel for the government or through instructions to the jury by the court on the elements of the crime. Counsel for government refused to join in such a stipulation, and the court refused to require the government so to do.

 The court did not err. First, we perceive no authority for counsel or the court to modify a criminal statute enacted by Congress by eliminating through stipulation one of the elements of the crime. But even if the proffered stipulation did not go so far as to constitute the modification of a criminal statute, "The Government was not required to accept a judicial admission . . . of the defendant but had a right to proffer proof on the point admitted." *United States v. Brickey,* 426 F.2d 680, 686 (8th Cir. 1970). For like holdings in cases involving a similar statute, *see United States v. Smith,* 520 F.2d 544 (8th Cir. 1975), *United States v. Steeves,* 525 F.2d 33 (8th Cir. 1975), and *see also* the following cases cited in *Brickey: United States v. Mishkin,* 317 F.2d 634, 638 (2d Cir. 1963); *Parr v. United States,* 255 F.2d 86, 88 (5th Cir. 1958); *Alire v. United States,* 313 F.2d 31, 34–35 (10th Cir. 1962).

Accordingly, the judgment of conviction will be reversed and the matter remanded to the district court for a new trial.