

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-12-1995

# USA v Jacobs

Precedential or Non-Precedential:

Docket 93-3644

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation
"USA v Jacobs" (1995). *1995 Decisions.* Paper 11.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/11

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 93-3644

———————

UNITED STATES OF AMERICA

v.

ORLANDO JACOBS,
Appellant

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Criminal No. 93-00141)

———————

Argued:  June 7, 1994
Before:  MANSMANN, ALITO, and ROSENN, <u>Circuit Judges</u>

(Opinion Filed: January 12, 1995)

———————

FREDERICK W. THIEMAN
United States Attorney
ALMON S. BURKE, JR. (Argued)
Assistant United States Attorney
BONNIE R. SCHLUETER
Assistant United States Attorney
Office of United States Attorney
633 United States Post Office & Courthouse
Pittsburgh, PA 15219

<u>Counsel for Appellee</u>

THOMAS S. WHITE
Federal Public Defender
W. PENN HACKNEY
First Assistant Federal Public Defender

KAREN SIRIANNI GERLACH (Argued)
Assistant Federal Public Defender
415 Convention Tower
960 Penn Avenue
Pittsburgh, PA 15222

<u>Counsel for Appellant</u>

---

OPINION OF THE COURT

---

ALITO, <u>Circuit Judge</u>:

Orlando Jacobs has appealed the judgment imposed following his conviction for possession of a firearm by a convicted felon.  He argues:  (1) that the district court should have bifurcated the elements of the offense with which he was charged, (2) that, if this bifurcation was denied, the district court should have prevented the jury from learning that the prior felony conviction alleged in the indictment was for burglary, (3) that the district court should have excluded evidence that his possession of the firearm occurred during an aborted drug transaction, (4) that the district court gave an erroneous instruction on the requirement of proof beyond a reasonable doubt, and (5) that the Sentencing Commission exceeded its authority in promulgating the "Armed Career Criminal" provision of the Guidelines, U.S.S.G. § 4B1.4.  We affirm the judgment of the district court.

I.

Jacobs was indicted in the United States District Court for the Western District of Pennsylvania for one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  The indictment alleged that Jacobs possessed

a .357 magnum revolver on October 22, 1992, after having been previously convicted in 1988 in the Court of Common Pleas of Allegheny County, Pennsylvania, for the crime of burglary.

Before trial, Jacobs' attorney filed a motion in limine to exclude or limit evidence of Jacobs' prior convictions. Noting that the government had stated in pretrial submissions that Jacobs had two prior felony convictions (for burglary and robbery) in addition to the conviction alleged in the indictment, the defense made three separate requests. First, the defense asked the court "to sever the element of possession from the element of a prior conviction so that the jury [would] determine the issue of possession before being informed that Jacobs ha[d] a prior conviction." App. at 313-16 (citing United States v. Joshua, 976 F.2d 844 (3d Cir. 1992), and United States v. Busic, 587 F.2d 577 (3d Cir. 1978), rev'd on other grounds, 446 U.S. 398 (1980)).

Second, the defense requested that, if severance was not granted, the court should nevertheless prevent the jury from learning that the prior conviction charged in the indictment was for burglary. See id. at 320-21. The defense argued that "to inform the jury of the nature of his prior conviction [was] unnecessary and [would] unfairly prejudice him in violation of Rule 403 of the Federal Rules of Evidence and violate his right to due process of law." Id. at 320.

Third, the defense argued that, if Jacobs chose to testify, his prior convictions should not be admitted for impeachment purposes under Fed. R. Evid. 609. See id. at 321-324.

The district court denied these requests. With respect to severance, the court stated that Joshua and Busic were not controlling because they "deal[t] with the issue of severing other counts," not elements of a single offense. App. 87-88. Turning to the other issues, the court stated:

> I am going to permit the admission of the prior burglary conviction. We are not going to get into the details of how it occurred unless you open that door. But the government will offer, I assume, the state court papers reflecting the judgment in that court and the sentence, and I believe again that is appropriate under the circumstances, and I don't believe that any prejudice to the defendant exists under the circumstances, and if any prejudice does so exist, the probative value substantially outweighs any prejudice.

Id. at 88-89.

At trial, the prosecution's evidence showed the following. On October 22, 1992, two undercover Pittsburgh police officers, George Ciganik and Maurice Jones, were on patrol in an unmarked car. As they approached an intersection, they spotted the defendant and two women, Alice Wright and June Coleman. When the officers slowed down, Wright yelled, "[A]re you holding [?]." Jones interpreted this statement as referring to narcotics. Ciganik answered "no," and Wright then asked, "[A]re you looking?" Ciganik responded "yes," and Wright told the officers

to pull over.  Wright then motioned and spoke to the defendant, and walked to within a few feet of her.

When Ciganik left the car, however, Wright recognized him and shouted to the defendant, "[T]ask force, get out of her[e]."  Ciganik took out his badge and shouted that he and his partner were police officers, and the defendant then took two steps back and appeared to swallow objects.  As Ciganik approached with his gun drawn, the defendant pulled a .357 magnum revolver from his waistband and pointed it at him.  However, the defendant was subsequently disarmed and arrested.

The defendant testified at trial on his own behalf and disputed this version of the events.  He stated that just before his arrest, Wright was arguing with the officers.  According to the defendant, Ciganik jumped out of his car, put a gun in the defendant's face, told him to open his mouth, "got real mad," and then handcuffed him and threw him in the car.  The defendant denied having seen the .357 magnum before the trial.  He also testified that at the time of his arrest he had a cast on his arm and was wearing sweat pants, and he said that the .357 magnum could not have fit in the pants' waistband or pockets.  On direct examination, the defendant admitted the 1988 burglary conviction, stating that he had pled guilty because he was guilty, and on cross-examination the prosecutor elicited a similar admission, apparently for impeachment purposes.

Coleman also testified for the defense, but her testimony was sketchy.  She said that she, Wright, and the defendant were walking together when Wright approached a car and then motioned to the defendant.  Coleman said that she kept walking and that, when she heard shouting and turned around, Wright and the defendant were in custody.

The jury found the defendant guilty.  Applying the "Armed Career Criminal" provision of the Guidelines, U.S.S.G. § 4B1.4, the district court concluded that Jacobs' guidelines' sentencing range was 262 to 327 months, and the court sentenced him to imprisonment for 22 years.  This appeal followed.

II.

The defendant's first argument is based primarily on Busic and Joshua.  In Busic, we stated in dictum that, if a defendant is charged with multiple offenses, including one requiring proof of a prior felony conviction, the trial judge should sever the latter offense unless the conviction would be independently admissible with respect to the other charges.  See Busic, 587 F.2d at 585.  We noted, however, that one district court had addressed this problem by taking the "novel approach" of conducting a "two-stage trial, whereby the jury, having reached a verdict on the other counts, would then proceed to consider the counts requiring proof of prior convictions."  Id.

In _Joshua_, we specifically approved this latter approach.  In that case, the defendant was charged with (count I) armed bank robbery, (count II) use of a firearm during a crime of violence, (count III) receipt of a firearm with an obliterated serial number, and (count IV) possession of a firearm by a convicted felon.  The district court conducted a bifurcated trial.  "The jury first heard evidence and deliberated concerning the first three counts, and then heard evidence of the defendant's criminal record and deliberated concerning Count Four."  _Id._ at 846.  On appeal, the defendant argued that the district court should have severed count IV and conducted an entirely separate trial on that charge, but we disagreed and wrote:

> We conclude that the procedure adopted by the district court here strikes an appropriate balance between the concern about prejudice to the defendant and considerations of judicial economy . . . .  The defendant's criminal past is not made known to the jury until after they have reached a verdict with respect to the other charges.  At the same time, this procedure is considerably more efficient than conducting an entire new jury trial on the weapon possession charge at a later date.

_Joshua_, 976 F.2d at 848.

_Joshua_ is not directly applicable to this case because here the defendant was charged in a single-count indictment, but the defendant maintains that the logic of _Joshua_ required a bifurcated trial nevertheless.  He argues:

> [W]here, as here, a prior conviction is an element of the offense, that element should be severed, and the jury should be permitted to determine the existence of

> the other elements, before learning that the defendant
> has a prior conviction.  The goal of such severance
> would be the same as the goal for severance of counts:
> the insulation of the jury from prejudicial information
> to which it would not otherwise be exposed.  It would
> therefore be a logical extension of Joshua to allow
> severance of elements of the offense.

Appellant's Br. at 9.

This precise argument has been rejected by three other courts of appeals, and we find their reasoning persuasive.  In United States v. Collamore, 868 F.2d 24 (1st Cir. 1989), the defendant, who had been indicted for possession of a firearm by a convicted felon, "moved to bifurcate the possession element of the crime from the element pertaining to his prior convictions." Id. at 25-26.  The district court ruled in the defendant's favor and entered an order providing that the issue of possession would be tried first without any mention of the defendant's prior convictions.  If the jury found that the defendant had possessed the weapon, "the jury would be brought back to the courtroom and the government would be provided a full opportunity to produce any admissible evidence as to any aspect of th[e] defendant's prior criminal record."  Id. at 26.

The First Circuit, proceeding under its mandamus power, reversed.  The court observed that neither the parties nor the court had located "a single case allowing . . . bifurcation of a trial by dividing it along the elements of the crime charged." Id. at 27.  The court continued:

> The dearth of cases, we feel, is because such a
> procedure would result in serious problems.
> . . .  [W]hen a jury is neither read the statute

setting forth the crime nor told of all the elements of the crime, it may, justifiably, question whether what the accused did was a crime.  The present case is a stark example.  Possession of a firearm by most people is not a crime.  A juror who owns or who has friends and relatives who own firearms may wonder why Collamore's possession was illegal.  Doubt as to the criminality of Collarmore's conduct may influence the jury when it considers the possession element.

Id. at 28.

The same issue was addressed by the Eleventh Circuit in United States v. Birdsong, 982 F.2d 481 (11th Cir.), cert. denied, 113 S. Ct. 2984 (1993).  Birdsong appealed his conviction for possession of a firearm by a convicted felon and contended that the district court had erred in denying his "motion to bifurcate the possession issue from the other elements of the crime charged."  Id. at 482.  Rejecting this argument, the Eleventh Circuit noted that "[a] request to bifurcate the presentation of evidence on different elements of a single offense is extremely rare."  Id.  The court "specifically adopt[ed] the reasoning of the First Circuit in Collamore and [held] that the District Court did not err by failing to grant the defendant's motion to bifurcate the trial on the elements of the charge of possession of a firearm by a convicted felon."  Id.

The Ninth Circuit reached a similar conclusion in United States  v. Barker, 1 F.3d 957 (9th Cir. 1993).  Barker, who likewise had been indicted for possession of a firearm by a convicted felon, filed a motion in limine, requesting that the trial judge "bifurcate the `possession' element of the crime from

the `felon' element of the crime," and the district court granted his motion.  Id. at 958.  The district court proposed to instruct the jury that "the parties have agreed that mere possession [of the firearm] is criminal in this case and it is not for [the jury] to decide the wisdom of such a law."  Id.  "If the jury convicted Barker absent the felony element, Barker would [have] then stipulate[d] to the prior felony conviction.  Under this scheme, the indictment would not (and indeed could not) [have been] read to the jury."  Id.

The government sought review of the district court's bifurcation order by means of mandamus, and the Ninth Circuit granted the government's petition.  See id. at 959.  The court observed that the charge against Barker "require[d] the government to prove beyond a reasonable doubt that Barker ha[d] been convicted of a prior felony" but that the district court's order changed "the very nature of the charged offense."  Id.  The court held that a "district court may not bifurcate the single offense of being a felon in possession of a firearm into multiple proceedings."  Id.

While our court has not previously considered the precise argument raised by the defendant in this case, we rejected a very similar argument in United States v. Williams, 612 F.2d 735 (3d Cir. 1979), cert. denied, 445 U.S. 934 (1980).  There, the defendant was charged with receipt of a firearm by a convicted felon.  His attorney offered to stipulate that the

defendant "was a convicted felon and to preclude thereby any mention to the jury of the appellant's felony status either by argument of counsel for the government or through instructions to the jury by the court on the elements of the crime." Id. at 740. Holding that the government was not required to agree to the stipulation, we wrote:

> First, we perceive no authority for counsel or the court to modify a criminal statute enacted by Congress by eliminating through stipulation one of the elements of the crime. But even if the proffered stipulation did not go so far as to constitute the modification of a criminal statute, "The Government was not required to accept a judicial admission of the defendant but had a right to proffer proof on the point admitted."

Id. (quoting United States v. Brickey, 426 F.2d 680, 686 (8th Cir.), cert. denied, 400 U.S. 828 (1970)); see also United States v. Gilliam, 994 F.2d 97, 102 (2d Cir.), cert. denied, 114 S. Ct. 335 (1993).

In view of these authorities, we hold that the district court in this case acted correctly in denying the defendant's bifurcation request.


                                III.

The defendant argues that, even if bifurcation was not required, the district court erred in permitting the jury to learn that his prior conviction was for burglary. We reject this argument as well.

Some federal criminal offenses, including the offense with which the defendant was charged in this case, have as one of

their elements the fact that the defendant was previously convicted for another crime.  In a prosecution for an offense having such an element, the government generally seeks to establish the requisite prior conviction by offering a copy of a prior judgment of conviction, and this judgment usually reveals the specific offense for which the defendant was previously convicted.  Because this judgment goes directly to one of the elements needed for conviction, it is unquestionably relevant under Fed. R. Evid. 402, but the defense often contends that the judgment should nevertheless be excluded in whole or in part under Fed. R. Evid. 403 because evidence regarding the specific felony for which the defendant was previously convicted is not necessary and may be unfairly prejudicial.  Instead of admitting an unredacted judgment, it is often argued, the court should require redaction of the judgment, require the government to accept a stipulation that the defendant was previously convicted for an undisclosed felony, or perhaps take judicial notice of the fact that the defendant has a prior conviction for an unspecified felony.  Faced with such arguments, the courts of appeals have handed down decisions that fall into essentially three groups.  Several courts of appeals have taken the position that evidence of the specific felony for which the defendant was previously convicted should generally be kept from the jury.[1]  Other courts

---

[1].  The First and Fourth Circuits have so held, and the Second Circuit has taken the same view in dictum.  See United States v. Lewis, Nos. 93-1819, 93-1820, 1994 WL 650268, at *14 (1st Cir. November 14, 1994) (noting that the district court should have

of appeals have held that the question whether to admit such evidence is committed to the discretion of the trial judge and should be decided on a case-by-case basis.[2]  Finally, some courts of appeals have held that such evidence should be admitted.[3]

Our court has not squarely decided this question,[4] but our opinion in Williams, which we discussed above, appears most closely aligned with the last group of decisions.  The defendant in Williams offered to stipulate to a prior felony conviction, but his proposal, rather than informing the jury that he had a

(..continued)
accepted the defendants' offers to stipulate that they were felons); United States v. Rhodes, 32 F.3d 867, 870-871 (4th Cir. 1994); United States v. Tavares, 21 F.3d 1, 3-5 (1st Cir. 1994) (in banc); United States v. Gilliam, 994 F.2d 97, 103 (2nd Cir.), cert. denied, 114 S. Ct. 335 (1993); United States v. Poore, 594 F.2d 39, 41-42 (4th Cir. 1979).

[2].  See United States v. Brinklow, 560 F.2d 1003, 1006 (10th Cir. 1977) ("Whether the government should be required to accept defendant's offer to stipulate as to the fact of a prior felony conviction is a discretionary matter with the trial court."), cert. denied, 434 U.S. 1047 (1978); United States v. O'Shea, 724 F.2d 1514, 1516-17 (11th Cir. 1984); see also United States v. Dockery, 955 F.2d 50, 54 (D.C. Cir. 1992) (dictum).

[3].  See United States v. Breitkreutz, 8 F.3d 688, 690-93 (9th Cir. 1993) (upholding the rule that "the prosecution has a right to refuse a stipulation"); United States v. Flenoid, 718 F.2d 867, 868 (8th Cir. 1983); United States v. Blackburn, 592 F.2d 300, 301 (6th Cir. 1979).

[4].  The question at issue here -- the admission of evidence regarding the type of felony for which a defendant was previously convicted when the defendant is charged with an offense having as one of the elements the fact that the defendant has a prior felony conviction -- is distinct from the question of admitting comparable evidence under Fed. R. Evid. 404(b).  With respect to the latter question, see, e.g., Government of the Virgin Islands v. Archibald, 987 F.2d 180, 186 (3d Cir. 1993).

conviction for an undisclosed felony, would have prevented the jury from learning that he had any prior felony conviction.  It must be noted, however, that in holding that the Williams trial judge had properly refused the defense proposal, we wrote broadly that "`[t]he Government was not required to accept a judicial admission of the defendant but had a right to proffer proof on the point admitted.'"  Williams, 612 F.2d at 740, (quoting United States v. Brickey, 426 F.2d 680, 686 (8th Cir.), cert. denied, 400 U.S. 828 (1970)).

In any event, we are not required in this case to resolve the general question addressed by the other courts of appeals.  As noted above (see typescript at 5), Jacobs elected to take the stand, and he testified during both direct[5] and cross-examination that he had been convicted in 1988 for burglary.  Under Rule 609(a)(1), the fact that Jacobs had a prior felony conviction and the type of felony involved[6] were admissible for

_____

[5].  There is authority for the proposition that this testimony on direct examination constituted a waiver of any objection to the admission of the conviction for impeachment, see United States v. Williams, 939 F.2d 721, 723-25 (9th Cir. 1991), but since we hold that it was admissible for impeachment, we need not reach that issue here.

[6].  Case law firmly establishes that it is proper to admit evidence of the type of felony involved in a prior conviction used for impeachment under Fed. R. Evid. 609(a)(1).  See 3 C. Mueller & L. Kirkpatrick, Federal Evidence § 279 at 272 (1994 (citing cases); 3 J. Weinstein and M. Berger, Weinstein's Evidence § 609[05] at 66-67 & n.20 (1994) (same); McCormick, Evidence § 43 at 98 (1984) (same); M. Graham, Federal Practice and Procedure § 6516 at 79 & n.1 (1992 & 1994 Supp.) (same); United States v. Brown, 583 F.2d 659, 670 n.15 (3d Cir. 1978) (noting that cross-examination can include "the essential facts

impeachment purposes, subject to Rule 403.  The district court's ruling on the Rule 403 question is subject to review for abuse of discretion,[7]  and we find no such abuse here.  Accordingly, there was an independent basis for admitting the fact that the defendant's prior conviction was for burglary.

IV.

The defendant next argues that the district court erred in admitting evidence suggesting that a drug transaction was being negotiated just before he allegedly pulled out the revolver and was arrested.  The defendant contends that this evidence was not admissible under Fed. R. Evid. 402 and 404(b) and that it should have been excluded under Fed. R. Evid. 403.  We disagree.

Evidence tending to show that the defendant was a participant in the selling of drugs was relevant under Rule 402 and was admissible under Rule 404(b) to show that the defendant had a motive for carrying a firearm.  Moreover, exclusion of this evidence under Rule 403 was not warranted, since this evidence had significant probative value that was not substantially outweighed by the danger of unfair prejudice.

(..continued)
of a prior crime"), cert. denied, 440 U.S. 909 (1979).  But see M. Graham, supra, § 6516 at 91-96 (suggesting limitation).

[7].  See United States v. Provenzano, 620 F.2d 985, 1003 n.23 (3d Cir.), cert. denied, 449 U.S. 899 (1980); Wilson v. Groaning, 25 F.2d 581, 586 (7th Cir. 1994),

V.

The defendant maintains that the district court violated due process by giving a jury instruction that diluted the constitutionally required standard of proof beyond a reasonable doubt. The defendant specifically challenges the use of the phrase "moral certainty" in the following portion of the instructions:

> Proof beyond a reasonable doubt must, therefore, be of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.
>
> A reasonable doubt exists whenever, after a careful and impartial consideration of all of the evidence in this case or lack of it, you do not feel convinced to a moral certainty that the defendant is guilty of the charge.

App. 291 (emphasis added).

Applying the Supreme Court's decision in Victor v. Nebraska, 114 S. Ct. 1239 (1994), we hold that the district court's use of the phrase "moral certainty," although inadvisable, did not violate due process. In Victor, the Supreme Court reviewed the convictions of two men, Victor and Sandoval, who had been convicted of murder and sentenced to death in two separate jurisdictions. Both men raised due process challenges to jury instructions on reasonable doubt that used the phrase "moral certainty." In considering these arguments, the Supreme Court first traced the original nineteenth century meaning of the phrase "moral certainty" and concluded that it was essentially the same as proof beyond a reasonable doubt. Id. at 1246. The

Court recognized that this phrase "is not a mainstay of the modern lexicon," id. at 1246, and stated that it did not "condone the use of the . . . phrase," id. at 1241, but the Court concluded that due process had not been violated in either Victor's or Sandoval's case because the instructions in each case, taken as a whole, correctly conveyed the concept of reasonable doubt to the jury. See id. at 1243.

Addressing a contention virtually identical to the one now before us -- i.e., that the phrase "moral certainty" would be "understood by modern jurors to mean a standard of proof lower than beyond a reasonable doubt" -- the Court pointed to other language in the instructions that should have dispelled such an interpretation. Id. at 1247. In Sandoval's case, the Court relied primarily on the statement in the instructions that proof beyond a reasonable doubt required an "abiding conviction" in the defendant's guilt. Id. at 1247. In Victor's case, the Court relied, not only on this same phrase, see id. at 1250, but also on additional language in the instructions. The Court noted that the instructions equated reasonable doubt with "a doubt that would cause a reasonable person to hesitate to act." Id. at 1250-51. In addition, the Court observed that the jurors had been told that they had to be "convinced of Victor's guilt after full, fair, and impartial consideration of the evidence" and that they should base their decision solely on the evidence introduced at trial. Id. at 1251.

In the present case, we reach the same conclusion as the Supreme Court did in Victor, i.e., that the instructions, taken as a whole, adequately conveyed the concept of proof beyond a reasonable doubt and therefore did not violate due process. Here, as in Victor's case, the trial judge equated reasonable doubt with a doubt that would cause a reasonable person to hesitate to act. See App. 291. Furthermore, here, as in Victor's case, the trial judge instructed the jurors that they had to be convinced of the defendant's guilt after a careful and impartial consideration of all the evidence and that they should base their decision solely on the evidence presented. See id. at 290, 291, 293. While the trial court in this case did not use the phrase "abiding conviction," the court stated that proof beyond a reasonable doubt must be of a "convincing character," stressed the concept of the presumption of innocence, and admonished that "a defendant is never to be convicted on mere suspicion or conjecture." Id. at 290-91. Viewing the instructions as a whole, we find them to be similar to those in Victor's case and to comport with due process.

Our conclusion is not altered by the district court's statement that the jury should acquit the defendant if it viewed the evidence "as reasonably permitting either of two conclusions, one of innocence and the other of guilt."[8] Id. at 291. On

_____

8. Immediately after the portion of the instructions quoted in text, the district court stated:

appeal, the defendant attacks this statement, contending that its implication to lay jurors was that they should acquit only "if there [was] a 50-50 chance of innocence." Appellant's Br. at 37. In the district court, however, the defendant did not specifically object to this language, much less explain the rather subtle argument that he has advanced on appeal, and we certainly do not think that the language at issue, standing alone, constituted plain error. Furthermore, to the extent that the challenged language carries the implication ascribed to it by the defendant, we do not think that the implication is a strong one, and accordingly the inclusion of this language in the instruction does not persuade us that the instructions as a whole are constitutionally deficient.

While we thus find no due process violation in this case, we must make clear that the instructions employed should no longer be given without modification. In light of the Supreme Court's criticism of the phrase "moral certainty," it goes without saying that this antiquated phrase should no longer be used. We also note that the "two-inference" language attacked by

(..continued)
> So if you view the evidence in this case as reasonably permitting either of two conclusions, one of innocence and the other of guilt, you should adopt the conclusion of innocence and return a verdict of not guilty, because a defendant is never to be convicted on mere suspicion or conjecture.

Id. at 291. See 1 E. Devitt, C. Blackmam, M. Wolff, and K. O'Malley, Federal Jury Practice and Instructions § 12.10 at 354 (1992).

the defendant has been criticized by the Second Circuit,[9] and we think that this criticism should be heeded as well when it is specifically brought to the attention of trial judges in future cases.

VI.

The defendant's final argument is that the Sentencing Commission lacked the authority to promulgate the "Armed Career Criminal" provision of the Guidelines, U.S.S.G. § 4B1.4. Citing 28 U.S.C. § 994(b)(1) and (c), which authorize the Commission to promulgate guidelines for "categories of offenses," the defendant contends that "the Commission is to establish guidelines for substantive offenses only" and may not issue guidelines for sentencing enhancement statutes. See Appellant's Br. at 42. The defendant maintains that U.S.S.G. § 4B1.4 implements 18 U.S.C. § 924(e), which is a sentencing enhancement provision, see United States v. Hawkins, 811 F.2d 210, 217–20 (3d Cir.), cert. denied, 484 U.S. 833 (1987), and that U.S.S.G. § 4B1.4, under which he was sentenced, is therefore invalid. We do not agree.

The Sentencing Reform Act required the Commission to establish a sentencing range "for each category of offense

_____

[9]. See United States v. Inserra, 34 F.3d 83, 91 (2d Cir. 1994) (noting that "the `two-inference' jury instruction on reasonable doubt was improper"); United States v. Attanasio, 870 F.2d 809, 818 (2d Cir. 1989); United States v. Khan, 821 F.2d 90, 93 (2d Cir. 1987). The defendant in this case did not call any of these decisions to the attention of the trial judge or cite them in his appellate brief.

involving each category of defendant."  18 U.S.C. § 994(b)(1)

(emphasis added).  Section 4B1.4 of the Guidelines defines a

particular category of defendants, armed career offenders, and

sets out special rules for calculating their offense levels and

criminal history categories.  Thus, in every case in which it

applies, this provision, together with whatever other sections of

the Guidelines are applicable in that case, establishes a

sentencing range for the relevant offense (the offense of

conviction) and the relevant category of defendants (armed career

offenders).  Accordingly, Section 4B1.4 falls squarely within the

Commission's authority.

## VII.

For the reasons explained above, we affirm the judgment

of the district court.

United States v. Jacobs, No. 93-3644

MANSMANN, concurring.

I concur in the judgment of the majority and in its opinion in all respects except one. I would apply the logic and reasoning of our decision in United States v. Joshua, 976 F.2d 844 (3d Cir. 1992), to this case and hold that where a trial court finds that the introduction of evidence of a defendant's prior felony conviction would be unduly prejudicial, such evidence may be severed from the trial of the remaining elements of an 18 U.S.C. § 922(g)(1) offense.

In ruling on Jacobs' motion to exclude or limit the evidence pertaining to his prior conviction, the district court found that Joshua was not controlling because it addressed severance of counts of an indictment, rather than the severance of elements of an offense, as Jacobs requested here. In addition, the court did not believe that any prejudice to the defendant existed under the circumstances and found that, even if it did, the probative value substantially outweighed the prejudice to the defendant under the circumstances. (App. 87–88.)[10]

Although Jacobs was charged in a single count indictment, I find that the logic and reasoning of Joshua is nonetheless applicable here. In Joshua we held that in order to prevent prejudicing the jury, a count of a multi-count indictment which charged possession of a gun by a convicted felon could be severed to avoid exposing the jury to the defendant's previous conviction for armed bank robbery. We found that the bifurcated trial procedure adopted by the court struck the appropriate balance between the concern about prejudice to the defendant and considerations of judicial economy. 976 F.2d at 848.

Our overriding concern in Joshua was the exposure of the jury to prejudicial information. Specifically, our concern was that the necessity of introducing evidence of the defendant's criminal record, in order to prove the felon in possession of a

---

[10].  In response to the district court's ruling, defense counsel made an alternative request. This request, too, was designed to limit the impact of prejudicial information. Defense counsel asked the court to inform the jury that "Jacobs was charged with being in possession of a firearm after having received a conviction for a crime punishable by more than a year" (which is the language of the statute), rather than informing the jury that Jacobs had been convicted for burglary. The court denied the request, responding, "I intend to read exactly what the indictment charges, which I think is precise and to the point." (App. 88–89).

weapon charge, would prejudice the jury's deliberations on other counts. See also United States v. Busic, 587 F.2d 577 (3d Cir.), rev'd on other grounds, 446 U.S. 398 (1980) (severance could be granted where evidence of the prior conviction would not be independently admissible with respect to the remaining counts of the indictment).

   The potential for the type of prejudice that concerned us in Joshua is the same potential for prejudice that exists in this case. Thus, I do not see any reason for distinguishing between a criminal defendant who faces multiple counts of an indictment where one count of the indictment alleges a prior conviction as an element of the offense, and a criminal defendant who is charged in a single count with an offense that has a prior conviction as one of its elements.[11] Here, there was tremendous potential for prejudice to Jacobs from the jury's hearing the evidence regarding Jacobs' prior burglary conviction while it was deciding whether or not Jacobs possessed the firearm. The entire dispute, in this case, concerned whether Jacobs, in fact, possessed the firearm. At trial, police officers George Ciganik and Maurice Jones testified that Jacobs possessed a large revolver which he pulled from his waistband and pointed at the officers. (App. 165-66 and 129-30.) Jacobs took the stand and testified that he did not have a gun. Another witness, June Coleman (an unindicted co-conspirator of Jacobs), testified that Jacobs did not have a gun and that he was wearing a cast on his arm that night. (App. 229-30.) In deciding whether or not Jacobs possessed the firearm, there was absolutely no need for the jury to be informed that Jacobs had a prior criminal record.[12] In resolving this disputed issue of fact, it is

_____

[11].   I find the government's argument that the jury needed all the elements of the offense before it prior to deliberating on a single count, to be without merit. Severing the elements of this offense, or adopting a bifurcated trial procedure, is no different from the bifurcation which occurred in Joshua where the jury returned verdicts on three counts of the indictment and then returned to render a verdict on the fourth count which charged possession of a firearm by a convicted felon.

[12].   Because Jacobs' prior conviction was not relevant to the specific issue of whether Jacobs possessed a revolver on October 22, 1992, Joshua's requirement that the evidence of the prior conviction not be otherwise independently admissible is also satisfied. Indeed, after presentation of the government's case-in-chief, (during which evidence of Jacobs' prior burglary mentioned in the indictment was admitted), the district court granted Jacobs' motion to exclude evidence of his additional prior convictions, finding that the prejudicial value of these

possible, and maybe even probable, that the jury was unduly influenced by the fact that Jacobs had been previously convicted for burglary. Nonetheless, based on the cold record before us, I cannot say that the district court abused its discretion in refusing Jacobs' bifurcation or severance request. The district court is obviously in the best position to decide whether the fact or type of prior conviction would unduly influence a jury in deciding other elements of an offense. It is within the district court's discretion to decide what procedure should be employed, and if any is necessary, to insulate a jury from prejudicial information.

It has always been within the district court's discretion under Federal of Evidence 403 to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Moreover, control over the order of proof at trial is a matter that is committed to the discretion of the trial judge. United States v. Ammar, 714 F.2d 238, 246 (3d Cir.), cert. denied, 464 U.S. 936 (1983); United States v. Continental Group, Inc., 603 F.2d 444, 456 (3d Cir. 1979), cert. denied, 444 U.S. 1032 (1980). Although 18 U.S.C. § 922(g) requires proof of a prior conviction as an element of this offense, I see no reason why a trial court could not require that the jury determine the issue of possession before being informed that a defendant has a prior conviction. Accordingly, I would extend Joshua's application to indictments which allege a prior conviction as an element of the offense.

(..continued)
prior convictions outweighed their probative value. The court found this evidence had "nothing to do with the issue of whether the defendant possessed a revolver on October 22, 1992" and the court did "not want to impede his [Jacobs'] ability to tell his version of what happened." (App. 223-24.)