NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-2918 and 09-3932
_____

UNITED STATES OF AMERICA

v.

DEON HOLLOWAY,

Appellant in No. 09-2918

_____

UNITED STATES OF AMERICA

v.

TROY KELLY,

Appellant in No. 09-3932

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 08-00727)
Honorable C. Darnell Jones, II, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
November 18, 2010

BEFORE:  AMBRO, FISHER, and GREENBERG, Circuit Judges

(Filed: November 18, 2010)
_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

This matter comes on before the Court on appeals consolidated for disposition from judgments of conviction and sentence in this criminal case. The case originated when a grand jury indicted Deon Holloway and Troy Kelly on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Following their trial, a jury convicted both defendants, now appellants, on the weapons offense.

On June 28, 2009, the District Court sentenced Holloway to a 210-month term of imprisonment, five years of supervised release, a $1,500 fine, and a $100 special assessment. Then, on October 7, 2009, the Court sentenced Kelly to a 180-month term of imprisonment, five years of supervised release, a $1,500 fine, and a $100 special assessment. The Court entered judgment on July 7, 2009, in Holloway's case and on October 15, 2009, in Kelly's case. Appellants have filed timely notices of appeal.

The case is unusual because of the degree of a civilian's participation in appellants' apprehension, particularly inasmuch as the civilian was not a victim of appellants' offense. At approximately 12:00 a.m. on August 9, 2008, Marvin Ravenell, the civilian, while standing near a window with a street view and waiting for his order at Dwight's Bar-B-Que, a restaurant on Lancaster Avenue in West Philadelphia, observed Holloway and Kelly, who were unknown to Ravenell, along with two or three other men, walk past Dwight's. As they passed, Ravenell saw Holloway hand Kelly a black handgun that Kelly then placed in his back pocket or waistband. Ravenell immediately called 911 on his cell phone to report what he had seen. During the call Ravenell

2

described the two men's clothes and told the 911 dispatcher that they were walking eastbound on Lancaster Avenue.

After calling 911, Ravenell watched and waited for the police to respond. Moments later, Ravenell saw uniformed Philadelphia Police Department officers arrive in the area and begin questioning pedestrians. When Ravenell saw that the officers had stopped the wrong men, he got into his car and drove towards the officers.

Subsequently, Ravenell saw Holloway and Kelly enter and exit a store on Lancaster Avenue, following which they walked past Ravenell's parked car. Ravenell then saw appellants enter a green Ford Taurus that Ebone Walker, a childhood friend of Kelly, was driving. Kelly and Holloway respectively sat on the front and rear passenger seats of the Taurus.

Ravenell waived down a passing police car and told the officers in that car that he had called 911 and, in the call, had described the two men with a gun walking eastbound on Lancaster Avenue. Ravenell told the officers that these two men were now in a green Ford Taurus traveling eastbound on Lancaster Avenue. The officers relayed this information over police radio so that other police officers became aware of it.

Officers Mark Eib and Daniel Shall were driving westbound on Lancaster Avenue in a marked police car when they received a radio broadcast informing the patrol police that the two men with the gun were now in a green Taurus. Almost immediately after hearing the radio broadcast, Eib spotted the green Taurus and saw that its occupants were wearing clothing that appeared to match the description of the clothing that Ravenell had given the dispatcher. Eib, who was driving, made a U-turn and followed the Taurus,

3

activating the police car's lights and siren and signaling for the Taurus to pull over. As the Taurus pulled over, Officer Eib saw Kelly, the front seat passenger, take something from his back pocket and lean forward and place it under the front passenger seat.

Though originally ordering the occupants to stay in the vehicle, after backup officers arrived the officers reversed their directions and ordered them to come out of the vehicle. The officers then secured Holloway and Kelly at the rear of the vehicle. Eib then recovered a black Beretta semi-automatic handgun from under the front passenger seat. At about the same time other officers drove Ravenell to the arrest scene. Ravenell then positively identified Holloway and Kelly as the men that he had seen with the gun outside Dwight's restaurant, and he identified Holloway as the man who passed the gun to Kelly. The officers then arrested appellants.

Prior to appellants' joint trial, Kelly moved to bifurcate the trial so as to divide the elements of the offense with which he was charged, i.e., his possession of the Beretta and his prior felony record. Kelly believed that a joinder of the two elements would prejudice him. The District Court denied the motion, following which Kelly and the government stipulated that he had a prior felony conviction meeting the prior felony element of 18 U.S.C. § 922(g).

At the trial, Ravenell testified about his observations of Holloway and Kelly and his identification of them after their arrest. Several police officers testified about the Taurus's stop, appellants' arrest, and the recovery of the Beretta. In addition, the detective assigned to the case testified about the processing of the evidence. Ebone Walker, the driver of the car, testified about her interaction with Kelly and Holloway on

4

the night of the arrests and explained that she did not know that Kelly had a gun, nor did she see him place the Beretta in the car. Walker said that she was very upset when the officers found the Beretta. She further testified that she did not own the Beretta, that neither she nor anyone else in her family owned a gun, or, while in her car, possessed a gun, and that she never had let anyone use her car in the three months that she had owned it. She also said that no one who rode in her car with her possessed a gun.

During Ravenell's testimony, Holloway's attorney sought to introduce into evidence a video made from inside Dwight's restaurant showing the view out through the window where Ravenell was located when he saw Holloway and Kelly with the gun. Holloway's attorney explained that he was not offering the video to depict a reenactment of the events the night of the arrest or to show the extent of Ravenell's ability to see outside that night. Rather, the attorney wanted to use the video to demonstrate how long it would take a person to walk past the window at the pace that Ravenell said appellants had been walking. The government objected to the admission of the video, raising concerns about its accuracy and authenticity, the fact that it did not depict the conditions on the night of appellants' arrest,[1] and the video's potential to mislead and confuse the jury by causing it to speculate about other issues.

The Court agreed with the government that, even though Holloway was offering the video for the limited purpose that he described, the evidence's potential to confuse and mislead the jury outweighed its probative value. Thus, the Court excluded the video

---

[1] Among the reasons why conditions might be different, the government pointed to "the phase of the moon," app. at 104, which, of course, is always changing.

under Federal Rule of Evidence 403. The Court believed that the jury likely would consider the video as evidence of the ability and opportunity of a person in Dwight's to see outside on the night of appellants' arrest, and not simply as evidence of the possible duration of Ravenell's view of appellants on Lancaster Avenue. Moreover, the Court was concerned with the possibility that use of the video would invite speculation on numerous other issues. The Court stressed that Holloway's attorney could demonstrate without use of the video the point that he intended the video to demonstrate, i.e., how long it would take a person walking at a normal pace to pass by Dwight's window.

At the close of the government's case, appellants moved for judgments of acquittal under Federal Rule of Criminal Procedure 29. Holloway argued that the evidence established that he had only fleeting, momentary possession of the Beretta, a period legally insufficient to establish possession. Significantly, however, Holloway's attorney conceded that there was no case authority holding that a fleeting possession was of insufficient duration to establish possession under 18 U.S.C. § 922(g)(1). The attorney also acknowledged that, although the cases he cited involved claims of temporary innocent possession, he was "not asserting innocent possession here." App. at 294. The District Court pointed out that this Court's model jury instructions expressly stated that possession of a weapon could be fleeting or momentary, and the determination of whether a defendant was in its possession was a factual question for the jury and not a legal one for a court to resolve. Ultimately, the Court denied the motions for acquittal.

Holloway's attorney apparently was undeterred by the District Court's disposition of his Rule 29 motion, for he subsequently requested the Court to instruct the jury that

6

fleeting or momentary possession of the Beretta was insufficient to establish possession. Though the attorney conceded that the model jury instruction to which we already have made reference stated just the opposite, and recited that fleeting possession could, indeed, be sufficient for a conviction, he argued that there is a point at which a defendant's contact with a gun could be of too short a duration to establish that he had possession of it. The Court declined to give the instruction, noting that Holloway essentially was asking the Court "to state as a matter of law that certain conditions must be met," app. at 324, when neither the statute nor courts applying the statute had imposed that condition. Moreover, the Court pointed out that it previously had denied the Rule 29 motion premised on this same argument. After his conviction, Holloway filed an unsuccessful post-trial motion for a judgment of acquittal, again raising the argument that his fleeting possession of the Beretta was insufficient to establish that he had had its possession.

The Probation Office determined that Holloway had three prior convictions for felony drug offenses and had a guidelines base offense level of 24. Nevertheless, in light of the convictions, Holloway was an armed career criminal for purposes of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.1, and his offense level thus was raised to 33. Holloway's criminal history category was V, and so that his guideline sentencing imprisonment range was 210 to 262 months. Moreover, Holloway faced a mandatory minimum sentence of a 15-year term of imprisonment.

At Holloway's sentencing hearing, the District Court adopted the guideline calculation in the presentence report. The Court thoroughly considered the 18 U.S.C. § 3553(a) sentencing factors and all the facts and circumstances of the case, and determined

7

that a sentence within the advisory guideline range was warranted. The Court recognized that Holloway had a disadvantaged background, but concluded that his recidivism, the nature and seriousness of his criminal conduct, and his complete lack of rehabilitation made him a danger to the community and thus required the Court to impose a substantial term of imprisonment on him. The Court imposed a 210-month custodial term of imprisonment, a sentence at the bottom of the advisory custodial sentencing range.

The Probation Office determined that Kelly also had three prior state convictions for felony drug offenses and thus was an armed career criminal under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.1 and his offense level thus was raised to 33. Kelly also had a criminal history category of V, and therefore his guideline custodial sentencing range was 210 to 262 months. Like Holloway, Kelly faced a mandatory minimum sentence of a 15-year term of imprisonment.

At Kelly's sentencing hearing, the government presented certified copies of the records of conviction for each of Kelly's felony drug trafficking convictions. These records, which included the criminal complaint and the bill of information from the three cases, established that each of his convictions had been for possession of crack cocaine with intent to distribute, an offense which carried a maximum penalty under state law of a 15-year term of imprisonment, and thus qualified as a serious drug offense for armed career criminal purposes. While Kelly did not contest the record evidence that he had three previous convictions for drug trafficking offenses, he argued that the records did not establish that two of the convictions were punishable by a term of imprisonment of at least 10 years that 18 U.S.G. § 924(e) required for armed career criminal calculations.

8

Kelly argued that the bills of information for two of the convictions did not identify the type of drug involved in the offense involved, and, although the complaints stated that the offenses involved crack cocaine, the District Court could not rely on the complaints in making its armed career criminal determination. Rather, he contended that the documents before the Court were similar to the extra-judicial police reports that Shepard v. United States, 544 U.S. 13, 16, 125 S.Ct. 1254, 1257 (2005), said should not be considered in that determination. The government answered that the complaints were charging documents the use of which Shepard expressly sanctioned for sentencing consideration, and that the complaints and informations together conclusively established that Kelly's offenses all involved cocaine and thus were punishable by up to 15 years in prison. The Court agreed with the government that it could consider the complaints, and that the documents established that Kelly had three convictions for serious drug offenses and was subject to the 18 U.S.C. § 924(e) enhancement. The Court imposed a 180-month term of imprisonment, the mandatory minimum sentence.

On this appeal Holloway contends that the government's evidence failed to establish that he criminally possessed the Beretta and that we should recognize that there is a defense of "fleeting innocent contact" under 18 U.S.C. § 922(g).[2] Appellant Holloway's br. at 26 (emphasis added). Accordingly, he also contends that the District Court erred in refusing to inform the jury that fleeting contact with a firearm is insufficient to support a conviction under 18 U.S.C. § 922(g). Finally, he contends that

---

[2] It should be noted that notwithstanding Holloway's contention on this appeal, on Holloway's Rule 29 motion he said, as we quote above, that he was "not asserting innocent possession here." App. at 294.

the Court abused its discretion in rejecting the video and that his sentence was unreasonable.

Kelly raises two issues on this appeal. First, he contends that the Court erred in refusing to bifurcate the possessory and prior conviction elements of 18 U.S.C. § 922(g) for the trial. He acknowledges, however, that in United States v. Jacobs, 44 F.3d 1219 (3d Cir. 1995), we rejected a nondistinguishable bifurcation motion, but he urges that we should no longer follow Jacobs. Second, he contends that the government's evidence to support the career criminal sentencing enhancement was insufficient.[3]

We treat appellants' issues in the order that we set them forth above. In considering Holloway's related contentions that the government failed to establish that he criminally possessed the Beretta and in refusing to inform the jury that fleeting contact with a firearm does not support a 18 U.S.C § 922(g) conviction, we will assume without deciding that under section 922(g) there can be a fleeting possession defense.[4] But our assumption does not help Holloway, for even if there is a fleeting possession defense, we are not aware of any authority that suggests that the availability of the defense does not depend on the defendant's contact, no matter how fleeting, with the firearm being innocent. See, e.g., United States v. Washington, 596 F.3d 777, 782 (10th Cir. 2010);

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[4] The assumption, favorable to Holloway, that there can be a fleeting possession defense is against the great weight of precedent.

10

United States v. Williams, 389 F.3d 402, 405 (2d Cir. 2004). Moreover, Holloway

contends that we should recognize a defense of fleeting innocent contact.

We can conceive that there might be an innocent possession defense in certain

unusual situations. For example, it is possible that a felon would find a weapon and

immediately deliver it to a police station. Here, however, Holloway does not point to any

evidence that his possession of the weapon was innocent and, indeed, he hardly could do

so, as he does not acknowledge ever having possession of the Beretta. In this regard, we

point out that the evidence showed that Holloway passed the Beretta to Kelly who was a

convicted felon. Laying to the side the fact that Kelly secreted the Beretta when the

police were approaching, we see no basis to support a conclusion that Holloway's

possession of the weapon before he passed it had been an innocent act. See United States

v. Davis, 183 F.3d 231, 250 (3d Cir. 1999).

We also hold that the District Court did not abuse its discretion in refusing to

allow Holloway to use the video at the trial. We review the Court's ruling on this issue

on a deferential standard as involving the exercise of discretion rather than as involving

the consideration of whether the Court correctly interpreted the Federal Rules of

Evidence, a review that would have been plenary. See United States v. Furst, 886 F.2d

558, 577 (3d Cir. 1989). As we pointed out above, Holloway wanted to use the video to

demonstrate how long it would take a person to walk past the window at Dwight's

through which Ravenell saw Holloway hand Kelly the Beretta. But no matter how short

that period, it would have no bearing on a fleeting possession defense, as that defense

11

depended on Holloway's possession being innocent and there is no basis in the record to support a finding that the possession was innocent.

In reaching our result with respect to the video, we recognize that Holloway claims that he did not hand the Beretta to Kelly, and thus the identification of the person who did so was an issue at the trial. Indeed, even the question of whether anyone handed the Beretta to anyone else was an issue, as Holloway did not acknowledge that it had happened. But surely it had to have been obvious to the jury, with or without the video, that Ravenell's view of Holloway and Kelly as they passed Dwight's could not have been protracted. In fact, Ravenell testified that their passing "took less than 15 seconds." App. at 117.

Finally, we reject Holloway's contention that the Court abused its discretion in the imposition of his sentence. We review his sentence for procedural and substantive reasonableness. His guidelines custodial range as an armed career criminal was 210 to 262 months and the Court sentenced him at the bottom of that range. Though the range was advisory, we see nothing in the sentencing factors in 18 U.S.C. § 3553(a) that demonstrates that the Court abused its discretion in sentencing Holloway.

Kelly's two issues do not require extended discussion. First, he essentially acknowledges that the District Court was compelled to deny his bifurcation motion. In his brief, after setting forth that in <u>Jacobs</u> we rejected a bifurcation motion "similar to that which was presented in the present case," appellant's brief at 12, he "respectfully requests that this Court reject its prior holding in <u>Jacobs</u> and its progeny." <u>Id</u>. at 13. Of course, <u>Jacobs</u> binds us and we therefore are constrained to reject his request. <u>See</u> Third

12

Circuit Internal Operating Procedure 9.1; <u>Bimbo Bakeries USA, Inc. v. Botticella</u>, 613 F.3d 102, 116 (3d Cir. 2010).

Kelly's second contention is that "[t]he evidence presented by the government at sentencing was insufficient to establish the application of the Armed Career Criminal enhancement." Appellant's br. at 3. This argument centers on his contention that the District Court misapplied <u>Shepard</u> in concluding that the enhancement was appropriate.

To be an armed career criminal a defendant must commit an offense delineated by 18 U.S.C. § 922(g) and have three prior convictions for a violent felony or a "serious drug offense." 18 U.S.C. § 924(e)(1). The consequences of that designation are serious as the section requires that a sentencing court impose a minimum custodial term of 15 years on a defendant and it may impose a sentence up to a maximum term of life imprisonment. A serious drug offense is a federal or state drug offense carrying a "maximum term of imprisonment of ten years or more" but the statute does not make the sentence that the court actually imposed an element of the offense. 18 U.S.C. § 924(e)(2)(A)(ii).

In view of the reality that court records in some cases are not clear and that judgments of conviction and sentence may not spell out precisely all the elements of the offense of conviction, it can be difficult to determine if a prior offense is a predicate offense for an armed career criminal designation. <u>Shepard</u> addresses that problem by permitting a sentencing court to look at court documents such as complaints and bills of information beyond the judgment in making an armed career criminal career determination. <u>Shepard</u>, 544 U.S. at 23 n.4, 125 S.Ct. at 1261 n.4 ("any inquiry beyond

13

statute and charging documents must be narrowly restricted"). Here the District Court looked at such documents and, exercising de novo review, see United Stats v. Laboy-Torres, 553 F.3d 715, 718 (3d Cir. 2009), we agree with its conclusion that the documents make clear that the armed career criminal enhancement applied to Kelly.[5]

For the foregoing reasons the judgments and conviction and sentence entered in Holloway's case, No. 09-2918 on appeal, on July 7, 2009, and in Kelly's case, No. 09-3922 on appeal, on October 15, 2009, will be affirmed.

---

[5] It is significant that while Kelly contends that the complaints and bills of information were ambiguous as to the severity of the offenses charged, he does not challenge the authenticity of the documents.